BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Jonathan L. Gottfried (State Bar No. 282301)
  jgottfried@bgrfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for EVOX Productions, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| EVOX Productions, LLC,<br><br>                Plaintiff,<br><br>        vs.<br><br>California Rent-A-Car, Inc.<br>& Steve Vahidi,<br><br>                Defendants. | Case No. 2:15-cv-08046<br><br>**PLAINTIFF EVOX PRODUCTIONS, LLC'S OPPOSITION TO CALIFORNIA RENT-A-CAR, INC.'S MOTION FOR SUMMARY JUDGMENT OR FOR PARTIAL SUMMARY ADJUDICATION**<br><br>Judge:  Hon. Michael W. Fitzgerald<br>Date:    June 27, 2016<br>Time:   10:00 a.m.<br>Crtrm.: 1600<br><br>Trial Date:  January 10, 2017 |

640979.2

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT ...................................................................................... 2

   A.   Title 17 Section 113(c) Does Not Excuse Defendants'
        Infringement. ........................................................................... 2

        1.   The Plain Language of the Statute Does Not Favor
             Defendants' Interpretation of Section 113(c). ........................ 3

        2.   No Case Backs Defendants' Interpretation of Section
             113(c) .................................................................................. 4

        3.   The Policies Underlying the Copyright Act Do Not Favor
             Defendants' Interpretation of Section 113(c). ........................ 6

   B.   EVOX's Photos Are Not Derivative Works. ............................... 7

        1.   EVOX's Photos Are Not Derivative Works Because the
             Photos Are Entirely or Substantially Based Upon Useful
             Articles. ............................................................................... 7

        2.   EVOX's Photos Are Not Derivative Works Because They
             Do Not Recast, Transform or Adapt the Authorship of the
             Cars or Car Parts. ................................................................ 9

        3.   EVOX's Photos Are Not Derivative Works Because There
             Are No Preexisting Works in the Photos. ............................... 11

             a.   The Steering Wheel and Grilles Are Not
                  Copyrightable Works. ................................................ 12

             b.   Contrary to defendants' argument, the shape of the
                  cars are not subject to copyright. ............................... 14

             c.   Contrary to defendants' argument, the trademark
                  logos are not subject to copyright. ............................. 17

   C.   Even If EVOX's Photos Were Derivative Works, They Were not
        Unauthorized.  Under Section 113(c), EVOX Was Not Required
        to Obtain a License from the Car Manufacturers to Make and
        Distribute Photos of Cars. ....................................................... 19

   D.   EVOX's Photos Are Not Slavish Copies. ................................. 21

   E.   EVOX Is Not Attempting to Corner the Market on Standard
        Techniques. ............................................................................. 21

   F.   EVOX's Copyrights Are Not Invalid For Failure to Disclose
        Mandatory Information to the Copyright Office. ....................... 22

1

**<u>TABLE OF CONTENTS</u>**
**(cont'd)**

2                                                                                                **Page**

3      G.      Contrary to Defendants' Argument, EVOX's DMCA Claim
               Does Not Fail. .................................................................24
4
       H.      Contrary to Defendants' Argument, EVOX Has a Basis to
5              Recover Direct and Indirect Profits. ......................................24

6   III.   CONCLUSION ................................................................25

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bryant v. Gordon*,
    483 F. Supp. 2d 605 (N.D. Ill. 2007) ...........................................................................5

*Chestang v. Yahoo Inc.*,
    No. 2:11-CV-00989-MCE, 2012 WL 3915957 (E.D. Cal. Sept. 7, 2012).................18

*Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*,
    413 F.3d 324 (2d Cir. 2005)......................................................................................15

*Columbia Pictures Indus., Inc. v. Miramax Films Corp.*,
    11 F. Supp. 2d 1179 (C.D. Cal. 1998).......................................................................19

*Custom Chrome, Inc. v. Ringer*,
    No. CIV. A. 93-2634 (GK), 1995 WL 405690 (D.D.C. June 30, 1995)....................14

*Design Furnishings, Inc. v. Zen Path, LLC*,
    No. CIV. 2:10-CV-2765-WB, 2010 WL 5418893 (E.D. Cal. Dec. 23, 2010)...........15

*Durham Indus., Inc. v. Tomy Corp.*,
    630 F.2d 905 (2d Cir. 1980)......................................................................................14

*Eden Toys, Inc. v. Florelee Undergarment Co.*,
    697 F.2d 27 (2d Cir. 1982)..........................................................................................7

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
    122 F.3d 1211 (9th Cir. 1997).....................................................................................9

*Esquire, Inc. v. Ringer*,
    591 F.2d 796 (D.C. Cir. 1978).............................................................................15, 17

*Estate of Magnin v. Commissioner*,
    184 F.3d 1074 (9th Cir. 1999)...................................................................................11

*Ets-Hokin v. Skyy Spirits, Inc.*,
    225 F.3d 1068 (9th Cir. 2000)............................................................................ *passim*

*Fabrica, Inc. v. El Dorado Corp.*,
    697 F.2d 890 (9th Cir. 1983).......................................................................................8

*Fahmy v. Jay-Z*,
    835 F. Supp. 2d 783 (C.D. Cal. 2011).......................................................................24

*Guerrero v. RJM Acquisitions LLC*,
    499 F.3d 926 (9th Cir. 2007).....................................................................................11

1

## <u>TABLE OF AUTHORITIES</u>
### (cont'd)

2
**Page(s)**

3
*Harper & Row Publishers, Inc. v. Nation Enterprises*,
   471 U.S. 539 (1985) ..............................................................................................5

4

5
*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   755 F.3d 1038 (9th Cir.)................................................................................13, 15

6
*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
   345 F.3d 1140 (9th Cir. 2003)......................................................................22, 23

7

8
*Leicester v. Warner Bros.*,
   232 F.3d 1212 (9th Cir. 2000)............................................................................13

9
*Lenz v. Universal Music Corp.*,
   815 F.3d 1145 (9th Cir. 2016) (Defs.' Memo. ).................................................5

10

11
*Major v. Sony Music Entm't, Inc.*,
   No. 92 CIV. 2826 (PKL), 1992 WL 210115 (S.D.N.Y. Aug. 17, 1992) ...........4, 5, 20

12

13
*Marascalco v. Fantasy, Inc.*,
   953 F.2d 469 (9th Cir. 1991)..............................................................................24

14

15
*Mazer v. Stein*,
   347 U.S. 201 (1954) ............................................................................................17

16
*McDonald v. K-2 Indus., Inc.*,
   108 F. Supp. 3d 135 (W.D.N.Y. 2015) .............................................................22

17

18
*Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.*,
   696 F.2d 918 (11th Cir. 1983)............................................................................14

19

20
*Omega S.A. v. Costco Wholesale Corp.*,
   776 F.3d 692 (9th Cir. 2015)..............................................................................17

21
*Russ Berrie & Co. v. Jerry Elsner Co.*,
   482 F. Supp. 980 (S.D.N.Y. 1980) ....................................................................23

22

23
*Sadhu Singh Hamdad Trust v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.*,
   503 F. Supp. 2d 577 (E.D.N.Y. 2007)...............................................................19

24

25
*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003)..............................................................................22

26
*Schrock v. Learning Curve Int'l, Inc.*,
   586 F.3d 513 (7th Cir. 2009)..............................................................................21

27

28

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

*Sega Enterprises Ltd. v. Accolade, Inc.,*
    977 F.2d 1510 (9th Cir. 1992) ............................................................6, 18

*SHL Imaging, Inc. v. Artisan House, Inc.,*
    117 F. Supp. 2d 301 (S.D.N.Y. 2000) ...........................................10, 11

*Smith & Hawken, Ltd. v. Gardendance, Inc.,*
    No. C 04-1664 SBA 2005 WL 1806369, at *2 (N.D. Cal. July 28, 2005) ................................8

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
    464 U.S. 417 (1984) .....................................................................................5

*Transwestern Pipeline Co., LLC v. 17.19 Acres of Prop.,*
    627 F.3d 1268 (9th Cir. 2010) ..............................................................4

*Urantia Found. v. Maaherra,*
    114 F.3d 955 (9th Cir. 1997) ..............................................................23

*Whimsicality, Inc. v. Rubie's Costume Co.,*
    891 F.2d 452 (2d Cir. 1989) .............................................................8, 23

*Wild v. Benchmark Pest Control, Inc.,*
    No. 1:15-CV-01876- JLT, 2016 WL 1046925 (E.D. Cal. Mar. 16, 2016) ............................5, 6

**FEDERAL STATUTES**

17 U.S.C. § 101 ...........................................................7, 8, 9, 10, 13

17 U.S.C. § 102(a)(5) .................................................................18

17 U.S.C. § 106 (2) ...................................................................15

17 U.S.C. § 113(c) ...............................................1, 2, 3, 4, 5, 6, 19, 20

17 U.S.C. § 504(b) ....................................................................24

**RULES**

Fed. R. Civ. Proc. 52(a) ...........................................................7

Fed. R. Evid. 201(b) ...............................................................18

**REGULATIONS**

37 C.F.R. § 202.1(a) ...............................................................18

37 C.F.R. § 202.10(b) ...............................................................8

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Article 1, § 8 ....................................................................................6

**OTHER AUTHORITIES**

*Compendium of Copyright Office Practices* II § 505.03..................................15

*Compendium of Copyright Office Practices III* § 606 ...................................19

*Compendium of Copyright Office Practices III* § 924.2(C) ..........................16

H.R. No. 1476, 94th Cong., 2d Sess. 55 (1976)...............................................16

2 *Patry on Copyright* § 3:119.50.....................................................................10

# I.      INTRODUCTION

For many years, plaintiff EVOX Products, LLC ("EVOX") and its hundreds of employees during the time have incurred substantial time, costs, and effort creating, selling, and licensing high-quality, professional photographs of automobiles.  Without permission or payment, defendants Steve Vahidi and California Rent-A-Car, Inc. copied to their website scores of EVOX's photos. Defendants knowingly deleted the copyright information from the photos in order to hide their wrongdoing and then made money from the photos by using them to attract customers to their rental car business.  Defendants' conduct is straightforward copyright infringement and a violation of the Digital Millennium Copyright Act.

After EVOX objected, defendants did not acknowledge their infringement. Instead, via their motion for summary judgment, defendants ask this Court to re-write copyright law and overrule Ninth Circuit precedent to accommodate their infringement.  This Court, bound by clear statutory language, controlling Ninth Circuit precedent, and common sense, should summarily reject defendants' invitation.

<u>First</u>, defendants argue that 17 U.S.C. Section 113(c) allows anyone free use of an original artistic depiction of a utilitarian product (*e.g.*, a painting of a car or a photograph of a table) so long as the depiction is used in conjunction with advertising the product.  Defendants' argument is, quite simply, frivolous.

- Defendants' argument is contrary to the plain language of the statute, which applies solely to copyrighted works re-produced "in useful articles."  In other words, Section 113(c) affords protection to the advertiser of a product that has a copyrighted work <u>in</u> the product – *e.g.*, a t-shirt with a portrait of Michael Jordan.  Section 113(c) is wholly inapplicable to use of artistic depictions <u>of</u> products – *e.g.,* a painting of a boat.

- Defendants' argument is contrary to the case law. No court has applied Section 113(c) in the way defendants suggest, and defendants' interpretation would in effect overrule the Ninth Circuit's seminal decision that confirms that the Copyright Act provides equal protection to photographs of useful products. *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000).

- Defendants' argument is contrary to the policies underlying the Copyright Act. Defendants' re-write of the Copyright Act would transform a statute designed to protect artists into one that strips artists of rights they have held and exercised for generations.

<u>Second</u>, defendants assert that EVOX's photographs in particular cannot be protected under the Copyright Act because they are (a) unauthorized "derivative works" based on the cars they depict, and (b) unoriginal, "slavish" copies of the cars they depict. The same assertions were made by the defendant in the Ninth Circuit's *Ets-Hokin* case. The Ninth Circuit rejected them. Its holding is controlling here. And although this Court should not and need not look any further than the binding *Ets-Hokin* opinion, there are alternative grounds to reject defendants' assertions described below.

<u>Finally</u>, defendants' contention that the Court should summarily adjudicate EVOX's claim to defendants' wrongful profits should be rejected because (a) there is evidence from which a juror could conclude that defendants profited from their infringement and (b) the issue is not yet ripe because defendants have blocked relevant discovery.

In sum, and for the reasons explained below and in EVOX's concurrent motion for summary judgment, defendants' motion should be denied, and summary judgment on liability should be granted <u>in favor of EVOX</u> and against defendants.

## II.   ARGUMENT

### A.   Title 17 Section 113(c) Does Not Excuse Defendants' Infringement.

According to defendants, they had a right to use EVOX's photos under 17 U.S.C. § 113(c) because that statute allows them to "use even copyrighted photographs depicting a useful article as long as used in product advertisements of the useful article." (Defs.' Memo. at 8:13-15.)  Defendants' argument is wrong, as evidenced by the statute's plain language, by the case law, and by the policies underlying the Copyright Act.

### 1.   The Plain Language of the Statute Does Not Favor Defendants' Interpretation of Section 113(c).

Section 113(c), which is entitled "Scope of exclusive rights in pictorial, graphic and sculptural works," provides in relevant part as follows:

> In the case of a [copyrighted pictorial, graphic or sculptural] work lawfully reproduced **in useful articles** that have been offered for sale or other distribution to the public, copyright does not include any right to prevent the making, distribution, or display of pictures or photographs of such articles in connection with advertisements or commentaries related to the distribution or display of such articles, or in connection with news reports.

(emphasis added)  The statute applies "[i]n the case of a [copyrighted pictorial, graphic or sculptural] work lawfully reproduced **in** useful articles . . ." (emphasis added).  Section 113(c) is inapplicable to photos (or other artistic depictions) of a useful article.

Here, Defendants simply disregard the plain language of Section 113(c). EVOX produces and distributes copyrighted photographs of useful articles (*i.e.*, cars).  The portion of Section 113(c) upon which defendants rely has absolutely nothing to do with copyrighted works of useful articles – rather the express language of the statute deals solely and expressly with copyrighted works *contained in useful articles*.

For example, if a vodka company lawfully incorporates a copyrighted label as part of its bottle via a valid license, then the vodka company as well as others can advertise the bottle without violating the Copyright Act.  Section 113(c) however does not speak to a situation in which a photographer takes a picture of the vodka

640979.2

-3-

bottle.  In that situation, the photographer can stop advertisers of vodka bottles (and anyone else) from using his photograph without his permission.

As another example:

(1)   Acme Corp. receives a license from Artist to reproduce one of Artist's paintings on a dinner plate.

(2)   Acme Corp.'s customer displays the plates in its catalog.  Of course, in the catalog picture, one can see the Artist's painting that was lawfully reproduced thereon.

(3)   Section 113(c) protects Acme Corp.'s customer from any liability to the Artist for copyright infringement.  The customer can advertise the utilitarian product – *i.e.*, the plate – without violating Artist's rights.

In contrast, here, the copyrights being asserted – *i.e.*, EVOX's photos of cars – were not reproduced "in" useful articles.  EVOX's photos were not incorporated into cars or anything else.  They are photographs "of" useful articles and are stand-alone works.  And it is those stand-alone works that defendants copied.  By its plain language, Section 113(c) is inapplicable.  Nothing in Section 113(c) indicates it is a loophole by which artists lose all rights to their original depictions <u>of</u> useful articles.

That should be the end of defendants' specious Section 113(c) argument. *Transwestern Pipeline Co., LLC v. 17.19 Acres of Prop.*, 627 F.3d 1268, 1271 (9th Cir. 2010) ("If the plain meaning of the statute is unambiguous, that meaning is controlling . . . .").  Nevertheless, even if the plain language were not clear (which it is), all other indicators are contrary to Defendants' interpretation.

## 2.   No Case Backs Defendants' Interpretation of Section 113(c)

<u>No court has applied Section 113(c) to photographs *of* useful articles.  This court would be the first</u>.  Rather, consistent with the language of the statute, cases applying Section 113(c) involve copyrighted works *in* useful articles.  For example:

- In *Major v. Sony Music Entm't, Inc.*, No. 92 CIV. 2826 (PKL), 1992 WL 210115 (S.D.N.Y. Aug. 17, 1992), a photographer licensed a photo to CBS Records, which CBS Records placed on the cover of a video package offered

for sale. *Id*. at *1. Consequently, there was a work lawfully reproduced *in* useful articles being offered for sale. Sony Records advertised the video package in various magazines, and that advertisement included the cover of the video package. *Id*. The photographer claimed copyright infringement, and the district court dismissed: "Since the photograph was lawfully reproduced as part of the video package cover, plaintiff's copyright does not include the right to 'prevent the ... display of ... photographs of such articles in connection with advertisements ... related to the distribution of such articles,' and his copyright claims must fail." *Id*. at *3 (quoting 17 U.S.C. § 113(c)).

- In *Bryant v. Gordon*, 483 F. Supp. 2d 605 (N.D. Ill. 2007), a photographer licensed his photos to a company that incorporated them into t-shirts and calendars. *Id*. at 609. Consequently, there was a work lawfully reproduced *in* useful articles being offered for sale. The company then filed for bankruptcy, and its assets were purchased by a new company that advertised the t-shirts and calendars online for sale. *Id*. at 612. The photographer claimed copyright infringement against the new company, but the district court explained that the t-shirts and calendars were useful articles and the company "was entitled to depict [them] in order to advertise [them] for sale" under 17 U.S.C. § 113(c). *Id*.

In both cases, the copyright at issue was incorporated into the useful article. In *Major*, it was a photo incorporated into the cover of a video; in *Bryant*, it was a photo incorporated into a t-shirt and calendar. Here, none of EVOX's photos were incorporated into useful articles. Rather, they are photographs *of* useful articles.[1]

---

[1] Defendants rely on *Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016) (Defs.' Memo. at 7:20-8:12), but that case does not cite Section 113(c). Nonetheless, defendants argue that the Ninth Circuit's decision in *Lenz* involves "fair use" and that Section 113(c) is somehow a spin on fair use (Defs.' Memo. at 7:20-8:18). Not only did defendants make that up, but their effort to turn the fair-use doctrine into a subsidy for every commercial advertiser to use *gratis* all photos of useful articles is anathema to the doctrine of fair use. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985) ("The fact that a publication was commercial as opposed to nonprofit is a separate factor that tends to weigh against a finding of fair use. '[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.' " (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)). Defendants also cite *Wild v. Benchmark Pest Control, Inc.*, No. 1:15-CV-01876- JLT, 2016 WL 1046925 (E.D. Cal. Mar. 16, 2016). But, in that case, the district court dismissed a defense under Section 113(c) because the defendant had "not pleaded facts to support the assertion that the use was exempted pursuant to Section 113(c), such as whether the image (footnote continued)

640979.2

-5-

1    Furthermore, as mentioned above and described in more detail below, the key

2 Ninth Circuit decision in the area of copyrighted photographs of products is *Ets-*

3 *Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000).  In *Ets-Hokin*, the Ninth

4 Circuit detailed the venerable history of protecting photographs under the Copyright

5 Act and confirmed that there is nothing different about photographs of products.  In

6 short, under *Ets-Hokin*, product photography – like photography of nature or people

7 or anything else – is fully protected by the Copyright Act.  If this Court were to

8 adopt Defendants' re-write of the plain language of Section 113(c), the Court would

9 effectively be overruling *Ets-Hokin*.

10       **3.    The Policies Underlying the Copyright Act Do Not Favor
                 Defendants' Interpretation of Section 113(c).**

11

12    The overarching policy of the Copyright Act is to protect the original

13 creations of artists and encourage the progress of the arts.  U.S. Const., Art. 1,

14 sec. 8; *see also Sega Enterprises Ltd. v. Accolade, Inc*., 977 F.2d 1510, 1527 (9th

15 Cir. 1992) ("The immediate effect of our copyright law is to secure a fair return for

16 an "author's creative labor.  But the ultimate aim is, by this incentive, to stimulate

17 artistic creativity for the general public good." (internal quotation marks omitted)).

18 Contrary to this purpose, defendants argue that advertisers should be able to freely

19 use the original work of artists who are creating new depictions of useful objects.

20 Under defendants' argument, Andy Warhol could not object if the Campbell Soup

21 company used his lithographs—without his permission and for free—to advertise its

22 products.  Or an artist who paints a yacht could not stop the yacht company from

23 using, without approval or compensation, the painting as the centerpiece of its ad

24 campaign.  The law does not so hold.  If it did, artists would be deterred, not

25 incentivized, to create.  *See* accompanying Declaration of J. Sedlik.

26    In sum, Section 113(c) does not allow defendants to (in the words of

27 ─────────────────────

28 was produced in a news report or an article available to the public."  *Id*. at *4.

1  defendant Vahidi) "take any photograph available on the Internet and display it on

2  California Rent A Car's website."  (Dkt. No. 43-5 at 3:4-6.)

3         **B.     EVOX's Photos Are Not Derivative Works.**

4         Defendants argue that EVOX's photos are unprotectable because they are

5  "derivative" works.  (Defs.' Memo. at 9-18.)  That is wrong.  A derivative work is

6  "a work based upon one or more preexisting works" that are "recast, transformed, or

7  adapted."  17 U.S.C. § 101.  This definition has three implications relevant to this

8  case:  (1) the derivative work must be based on, or substantially derived from, the

9  preexisting work, (2) the preexisting work must be recast, transformed or adapted,

10 and (3) the preexisting work must, itself, be copyrightable.  Defendants must prove

11 all three in order to prevail on their motion.  None is true with respect to EVOX's

12 photos:  EVOX's photo are not substantially based upon someone else's

13 copyrightable work that was recast, transformed or adapted.

14         **1.     EVOX's Photos Are Not Derivative Works Because the
                  Photos Are Entirely or Substantially Based Upon Useful
15                Articles.**

16         A derivative work is "a work based upon one or more preexisting works."

17 17 U.S.C. § 101.  The requirement that a derivative work be "based upon" a

18 preexisting work means that the derivative work must be "based in whole, or in

19 substantial part, upon a pre-existing (or 'underlying') work."  1 Nimmer on

20 Copyright § 3.01.  "[T]he term *derivative work* in a technical sense does not refer to

21 all works that borrow in any degree from pre-existing works.  A work is not

22 derivative unless it has substantially copied from a prior work."  *Id.  See also Eden*

23 *Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982),

24 *superseded on other grounds by* Fed. R. Civ. Proc. 52(a) (describing "derivative

25 works" as those "based substantially on pre-existing materials").  Consequently,

26 defendants can only prevail on their argument that EVOX's photos are derivative

27 works if they can prove that EVOX's photos are at least substantially based upon a

28 copyrightable work.  They cannot do so.

Defendants admit that "each [of EVOX's photos] are photographs of a useful article, namely manufactured vehicles of the brands and models that appear in the photographs." (Defendants' SSUF (Dkt. No. 43-2) No. 5)) *See also* Defendants' SSUF at 21:1-2 ("Manufactured automobiles in the 149 PHOTOGRAPHS are all useful articles as defined in 17 U.S.C. § 101."). The term, "useful article," has a specific meaning under the Copyright Act. It means "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. And "[c]opyright does not extend to an element of an article if it has any intrinsic utilitarian function." *Smith & Hawken, Ltd. v. Gardendance, Inc.,* No. C 04-1664 SBA, 2005 WL 1806369, at *2 (N.D. Cal. July 28, 2005) (citing *Fabrica, Inc. v. El Dorado Corp.*, 697 F.2d 890, 893 (9th Cir. 1983)). *See also Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989) ("Useful articles standing alone may never be registered."). Consequently, by defendants' own admission, EVOX's photos are not substantially based upon a copyrightable work—instead, they are based upon useful articles, which are not subject to copyright.

The Ninth Circuit applied this principle in *Ets-Hokin v. Skyy Spirits, Inc.,* 225 F.3d 1068 (9th Cir. 2000). In that case, the defendant argued that photos of a vodka bottle were derivative works because the photos included a potentially copyrightable label with a blue background and gold border together with the words: SKYY VODKA®. 225 F.3d at 1080. The Ninth Circuit rejected this argument. It first explained that the label's eligibility for trademark protection did not make it copyrightable. *Id.* at 1080. ("[W]e note that '[a] claim to copyright cannot be registered in a print or label consisting solely of trademark subject matter and lacking copyrightable matter.' 37 C.F.R. § 202.10(b)."). The Ninth Circuit then explained that, even assuming that the label could be copyrighted, the photos would still not be derivative works because:

Ets–Hokin's product shots are based on the bottle as a whole, not on

1   the label.  The whole point of the shots was to capture the bottle in its
2   entirety…. Because Ets–Hokin's product shots are shots of the bottle as
    a whole—a useful article not subject to copyright protection—and not
3   shots merely, or even mainly, of its label, we hold that the bottle does
    not qualify as a "preexisting work" within the meaning of the
4   Copyright Act.  As such, the photos Ets–Hokin took of the bottle
    cannot be derivative works.  The district court erred in so concluding.

5   *Id*. at 1081.

6       Defendants here recycle the same position that was rejected by the Ninth

7   Circuit in *Ets-Hokin*.  They pick apart EVOX's photos and argue that they are

8   derivative works because parts of the cars that were photographed (*e.g.,* a grille or

9   trademark logo) are (according to defendants) potentially copyrightable.  (Defs.'

10  Memo at 10-15.)  But EVOX's photos are not based upon a grille or a logo

11  (regardless of whether they include a grille or logo) any more than the photo in *Ets-*

12  *Hokin* was based upon the bottle label.  As defendants admit, EVOX's photos are

13  based upon useful articles:  cars.

14      In evaluating defendants' "derivative work" argument, the Court can and

15  should stop here.  There is a Ninth Circuit case that is directly on point.  This Court

16  is bound by it.  Based on *Ets-Hokin*, EVOX's photos are not "derivative" of the cars

17  they depict.  Nevertheless, out of an abundance of caution, EVOX will proceed to

18  discuss alternative reasons why the Court could reject defendants' assertion that

19  EVOX's photos are "unauthorized derivative works."

20          **2.    EVOX's Photos Are Not Derivative Works Because They Do
                    Not Recast, Transform or Adapt the Authorship of the Cars
21                  or Car Parts.**

22      A derivative work is one that has "recast, transformed, or adapted" a

23  preexisting work upon which it is based.  17 U.S.C. § 101.  The reproduction of a

24  work in a different medium does not result in a derivative work.  *See Entm't*

25  *Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1224 (9th Cir.

26  1997); 1 Nimmer on Copyright § 2.08 ("[I]t follows generally that the mere

27  reproduction of a work of art in a different medium should not constitute the

28  required originality, for the reason that no one can claim to have independently

-9-

1    evolved any particular medium.").

2         EVOX's photos do not recast, transform or adapt any authorship in the cars.

3    According to defendants, "[e]ach of the 149 PHOTOGRAPHS were successful at

4    capturing as accurately as possible the normal exterior or interior of well-known

5    automobile brands." (Defs.' Memo. at 4:10-11.)  Consequently, EVOX's photos

6    cannot be derivative works.

7         A similar issue was addressed by a district court in *SHL Imaging, Inc. v.*

8    *Artisan House, Inc.*, 117 F. Supp. 2d 301 (S.D.N.Y. 2000).  That case involved

9    photos of picture frames.  *Id*. at 303.  The photographer sued the owner of the

10   picture frames (Artisan House) when Artisan House used the photos without the

11   photographer's permission.  *Id*.  In response, Artisan House argued that the photos

12   were derivative works because they depicted Artisan House's frames.  *Id*. at 305.

13   The court rejected that argument:

14       any derivative work must recast, transform or adopt the authorship
         contained in the preexisting work. A photograph of Jeff Koons'
15       "Puppy" sculpture in Manhattan's Rockefeller Center, merely depicts
         that sculpture; it does not recast, transform, or adapt Koons' sculptural
16       authorship.  In short, the authorship of the photographic work is
         entirely different and separate from the authorship of the sculpture.
17
         This is not to suggest that photographs are incapable of derivative
18       authorship.  A cropped photograph of an earlier photograph is a
         derivative work.  Re-shooting an earlier photographic work with some
19       alteration of the expressive elements is another example.  However, in
         both cases the nature of photographic authorship would have been
20       recast, adapted, or transformed. Since plaintiff's photographs merely
         depict defendants' frames and do not recast, adapt or transform any
21       authorship that may exist in the frames, they are not derivative works.

22   *Id*. at 306.  *See also* 2 *Patry on Copyright* § 3:119.50 ("[E]ven if one were to find

23   that a photograph of an object is based on that 'preexisting work' within the

24   meaning of the definition of 'derivative work' in Section 101, such a photograph

25   must still 'recast, transform, or adapt' the authorship in the preexisting work to be

26   considered a derivative work.  Such recasting, transformation, or adaptation does not

27   occur in a photograph of an object, even copyrighted objects.  What makes a

28   derivative work a derivative work is the contribution of changes in the actual

authorship of the preexisting work, not a mere depiction of that work.").[2]

In sum, this Court could alternatively hold -- particularly based on defendants' argument that EVOX engaged in " 'accurate as possible' product photography" (Defs.' Memo. at 16:26) -- that EVOX's photos are not derivative works because they do not recast, transform or adapt the cars that they depict.[3]

### 3. EVOX's Photos Are Not Derivative Works Because There Are No Preexisting Works in the Photos.

As explained above, the Ninth Circuit in *Ets-Hokin* rejected the assertion that individual elements or parts of a photographed product should be evaluated to determine if the product is copyrightable. Rather, the entirety of the subject should be evaluated to determine if it is copyrightable. Nevertheless, in this case, even the individual components depicted in EVOX's photos are not copyrightable. Therefore, even if this Court were to ignore controlling Ninth Circuit precedent and evaluate the copyrightability of the individual car components (which it should not do), the result would be the same: EVOX's photos are not derivative works.

A "preexisting work" has a specific meaning under the Copyright Act. A

---

[2] Whether the photographs recast, transform or adapt a preexisting work is a different inquiry from whether the photographs have enough originality to warrant copyright protection. After concluding that the photographer did not recast, transform or adapt the picture frame, the court in *SHL* determined that the photos possessed sufficient originality to warrant copyright protection. 117 F. Supp. 2d at 311 ("What makes plaintiff's photographs original is the totality of the precise lighting selection, angle of the camera, lens and filter selection.").

[3] To be sure, the Ninth Circuit in *Ets-Hokin* assumed a photo of a bottle could theoretically be a "derivative work." However, legal assumptions are not precedential. *See Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938 (9th Cir. 2007) ("We are not required to follow what amounts to, at most, an implicit assumption"); *Estate of Magnin v. Commissioner*, 184 F.3d 1074, 1077 (9th Cir. 1999) ("When a case assumes a point without discussion, the case does not bind future panels."). Therefore, this Court could alternatively adopt the position of the court in *SHL Imaging* without violating Ninth Circuit precedent.

work is not "derivative" within the meaning of the Copyright Act merely because it contains any pre-existing elements. *See Ets-Hokin,* 225 F.3d at 1078 ("[S]imply because photographs are in this colloquial sense 'derived' from their subject matter, it does not necessarily follow that they are derivative works under copyright law."). Instead, "in order to qualify as a 'preexisting work,' the underlying work must be copyrightable." *Id.* ("a derivative work must be based on a preexisting work that is copyrightable"). As Professor Nimmer explained:

> All works are composed of pre-existing elements--whether words, paints or shapes, musical notes, or otherwise. But it does not follow that all works are therefore derivative or collective. Instead, such a categorization applies only to the extent that the pre-existing elements upon which a given derivative or collective work is based themselves constitute an original work of authorship within the meaning of Section 102.

1 Nimmer on Copyright § 3.06. Consequently, defendants can only prevail on their argument that EVOX's photos are derivative works if they can prove that the photos are based on someone else's copyrightable works. As discussed below, each of the items that defendants identify are not copyrightable and are therefore not preexisting works that would transform EVOX's photos into derivative works.[4]

### a. The Steering Wheel and Grilles Are Not Copyrightable Works.

Defendants argue that the cars' steering wheels and grilles are copyrightable works, and "[t]herefore, every photograph by EVOX among the 149 PHOTOGRAPHS is a derivative work of a pre-existing copyrightable original work." (Defs.' Memo. at 14:4-8) That argument fails for the following reasons.

---

[4] It is notable that defendants fail to point to a single copyright registration for any of the car parts (*e.g.,* trademark logos, car grilles, steering wheels or slope lines) that they claim to be subject to copyright. Nor do they cite to any case holding that a car is copyrightable. There is no evidence that any manufacturer has objected to EVOX's photos, even though EVOX has licensed its photos on 9,000 makes and models of cars since 2000 to thousands of websites and newspapers. (Declaration of Barry Thompson (Dkt. No. 34-1) ¶¶ 4, 14.)

As noted above, defendants concede that the subjects of EVOX's photos—cars—are useful articles.  And "an article that is normally a part of a useful article is considered a useful article."  17 U.S.C. § 101.  According to the Copyright Office, that includes "an ornamental wheel cover on a vehicle."  *See* http://www.copyright.gov/register/va-useful.html ("An article that is normally part of a useful article may itself be a useful article, for example, an ornamental wheel cover on a vehicle.").  "A work is a useful article, and therefore denied copyright for its shape as such, if it has an intrinsic utilitarian function, even though it may have other functions which are not utilitarian."  *Ets-Hokin,* 225 F.3d at 1080 (internal quotation marks omitted).  "Even if an article has a distinctive shape, like 'works of modernistic form sculpture' it should still be denied protection if that shape is inseparable from its function."  1 Nimmer on Copyright § 2A.08 (citing *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1040 (9th Cir.)).

Courts have recognized two types of separability:  physical and conceptual.

> Physical separability means that a "pictorial, graphic or sculptural feature incorporated into the design of a useful article ... can be physically separated from the article without impairing the article's utility and if, once separated, it can stand alone as a work of art traditionally conceived." [Paul] Goldstein, [*Copyright*] § 2.5.3, at 2:64.  Conceptual separability means that a pictorial, graphic or sculptural feature "can stand on its own as a work of art traditionally conceived, and ... the useful article in which it is embodied would be equally useful without it."  *Id.* at 2:67.

*Leicester v. Warner Bros.*, 232 F.3d 1212, 1219 n.3 (9th Cir. 2000).

Under the above guidelines, it is clear that a steering wheel and grille are not copyrightable.  A steering wheel has an intrinsic utilitarian function:  it steers the car.  *See* accompanying Declaration of Jacob George ("George Decl.") ¶ 11.  Likewise, a car grille is utilitarian:  it provides airflow that cools the engine.  (George Decl. ¶¶ 7-9)  Removing the steering wheel or the grille from the car would fail the test of physical separability as well as the test of conceptual separability since the useful article (the car) would not be equally useful without a steering wheel or grille.  Thus, regardless of whether the steering wheel and grille

have aspects that are not utilitarian and serve aesthetic purposes, they are not copyrightable.

Courts have repeatedly denied copyright protection to vehicles or vehicle parts. For example, in *Custom Chrome, Inc. v. Ringer,* No. CIV. A. 93-2634 (GK), 1995 WL 405690 (D.D.C. June 30, 1995), the district court upheld the Copyright Office's denial of copyright registration to "twenty-three sculpted motorcycle parts" and rejected the argument that the motorcycle parts were "separable sculptural and artistic features which are not primarily functional." *Id.* at *3, *5. Similarly, in *Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.,* 696 F.2d 918 (11th Cir. 1983), the Eleventh Circuit explained:

> This case involves whether wire-spoked wheel covers for automobiles are entitled to copyright protection as opposed to industrial design or some other trade protection. The district court in this copyright infringement suit concluded on summary judgment that the wheel covers are not entitled to copyright protection because they are useful articles without separable features. We affirm.

*Id.* at 919. The Eleventh Circuit noted that "functional components of useful articles, no matter how artistically designed, have generally been denied copyright protection unless they are physically separable from the useful article…. The wire wheel covers in this case are not superfluous ornamental designs, but functional components of utilitarian articles." *Id.* at 924. *Cf. Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 915 (2d Cir. 1980) ("[T]he steering wheel and moving path of the Drive Yourself Crazy game are the mechanisms that make the games work. The shapes of the toys and their dimensions and configurations also appear to have been dictated primarily by utilitarian considerations.").

Consequently, the Court should not conclude that EVOX's photos are derivative works of steering wheels or grilles.

> **b.      Contrary to defendants' argument, the shape of the cars are not subject to copyright.**

Defendants argue that EVOX's photos are derivative works because:

(1) sculptures are subject to copyright under 17 U.S.C. § 106, (2) the cars are based on wood or resin prototypes, and (3) the cars that reflect the prototypes in the cars' "slope lines" are therefore subject to copyright.[5]  (Defs.' Memo. at 3:22-26; 14:1-8)  The Copyright Act and Ninth Circuit have rejected this argument, which would render any useful article copyrightable by analogizing it to a sculpture.

   " '[A]nalogizing the general shape of a useful article to works of modern sculpture is insufficient for conceptual separability.' "  *Inhale*, 755 F.3d at 1042 (quoting *Compendium of Copyright Office Practices* II § 505.03, which the Ninth Circuit considered "persuasive").  In *Inhale,* the Ninth Circuit concluded that "[a]lthough [plaintiff's] water container, like a piece of modern sculpture, has a distinctive shape, the shape of the alleged 'artistic features' and of the useful article are one and the same." *Id.* (brackets and some internal quotation marks omitted)).  *See also Design Furnishings, Inc. v. Zen Path, LLC*, No. CIV. 2:10-CV-2765-WB, 2010 WL 5418893, at *5 (E.D. Cal. Dec. 23, 2010) ("The industrial design of the furniture clearly may not be copyrighted."); *Chosun Int'l, Inc. v. Chrisha Creations, Ltd*., 413 F.3d 324, 328 (2d Cir. 2005) ("one may not copyright the general shape of a lamp, because its overall shape contributes to its ability to illuminate the reaches of a room"); *Esquire, Inc. v. Ringer*, 591 F.2d 796, 804 (D.C. Cir. 1978) ("[T]he overall design or configuration of a utilitarian object, even if it is determined by aesthetic as well as functional considerations, is not eligible for copyright.").

   Defendants emphasize that a car's shape has an aesthetic or artistic dimension, which may be separable from its utilitarian function.  *See, e.g.,* Defs.'

---

[5] Defendants do not submit any images or other physical evidence regarding these full-scale wood or resin models.  Defendants therefore failed to provide sufficient evidence to enable the Court to conclude that the prototypes are copyrightable.  Furthermore, as explained in paragraphs six and twelve through fifteen of the accompanying Declaration of Jacob George, the prototypes are means to an end:  a functioning vehicle.

Memo. at 3:22-4:8.  But whether car designs have artistic elements is irrelevant to the question of whether the car's shape is separable from its utility.  *See* Compendium of Copyright Office Practices III § 924.2(C) ("Factors Not Relevant in Evaluating Separability: … (i) the aesthetic value of the design").  As the House Report for the Copyright Act explained:

> [A]lthough the shape of an industrial product may be aesthetically satisfying and valuable, the Committee's intention is not to offer it copyright protection under the bill.  Unless the shape of an automobile, airplane, ladies' dress, food processor, television set, or any other industrial product contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of that article, the design would not be copyrighted under the bill.  The test of separability and independence from "the utilitarian aspects of the article" does not depend upon the nature of the design—that is, even if the appearance of an article is determined by aesthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article as such are copyrightable.

H.R. No. 1476, 94th Cong., 2d Sess. 55 (1976).  In fact, the shape of the cars are inextricably intertwined with their utility.  (George Decl. ¶ 10)  One cannot imagine a car still functioning as a useful article (or even being a car) if it were deprived of its shape.  *See* Compendium of Copyright Office Practices III § 924.2(B) ("[T]he fact that an artistic feature is not necessary to or dictated by the utilitarian aspects of that article is irrelevant to this analysis.  If the feature is an integral part of the overall shape or contour of the useful article, that feature cannot be considered conceptually separable because removing it would destroy the basic shape of the useful article.").

Defendants' argument is not only wrong:  it would undermine the rule that useful articles are generally not subject to copyright protection since any useful article based originally on a prototype (*e.g.,* a computer, cell phone) would be subject to copyright based on its shape.  The D.C. Circuit, quoting the Register of Copyrights, has explained why this argument would improperly expand the items subject to copyright:

> [R]egistration of the overall shape or configuration of utilitarian articles would lead to widespread copyright protection for industrial designs.

640979.2

-16-

> The [Copyright] Register reasons that aesthetic considerations enter into the design of most useful objects.  Thus, if overall shape or configuration can qualify as a 'work of art,' 'the whole realm of consumer products garments, toasters, refrigerators, furniture, bathtubs, automobiles, etc. and industrial products designed to have aesthetic appeal subway cars, computers, photocopying machines, typewriters, adding machines, etc. must also qualify as works of art.'

*Esquire,* 591 F.2d at 801.

Defendants claim that the Supreme Court's opinion in *Mazer v. Stein*, 347 U.S. 201 (1954), supports their effort to obtain a copyright over the shape of a car. (Defs.' Memo. at 12:16-13:15)  In *Mazer*, the Supreme Court held that statuettes of male and female dancing figures were copyrightable despite their use as bases for table lamps.  *Id.*, 347 U.S. at 202.  The Court in *Mazer* did not hold that any useful article could be copyrighted if based on a prototype that could be spun as artistic. Judge Wardlaw of the Ninth Circuit recently addressed this same argument in her concurrence in *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692 (9th Cir. 2015).  In that case, Omega had a copyright in a unique design of a globe, and Omega sold watches with engraved reproductions of that design.  *Id.* at 693.  Omega argued that Costco had infringed Omega's copyright in the globe design by importing watches with the engraved design.  *Id.*  Omega "contend[ed] that just as the copyright owner in *Mazer* was permitted to restrict the distribution of lamps (useful articles) that incorporated his copyrighted work (the statuettes), so too should Omega be able to restrict the distribution of watches that incorporated its copyrighted work (the Globe Design)."  *Id.* at 702.  In her concurrence, Judge Wardlaw explained that "[c]ontrary to Omega's assertion, *Mazer* does not empower Omega to transform its Globe Design copyright into a watch copyright, thereby contravening the general rule against granting copyright protection over useful articles."  *Omega*, 776 F.3d at 702.

Consequently, the Court should reject defendants' argument that the cars' shapes turn EVOX's photos into derivative works.

c.     **Contrary to defendants' argument, the trademark**

**logos are not subject to copyright.**

Defendants argue that 95 of the 149 EVOX photos are derivative works because they display cars with "trademark logos." (Defs.' Memo. at 14:9-15:7) But whether the logos are trademarks is irrelevant to the question of whether EVOX's photos are derivative works based on a "preexisting work." In order to be considered a "preexisting work" within the meaning of the Copyright Act, it is not enough for the underlying work to be protected by trademarks, trade dress or patents—a "preexisting work" must be subject to copyright. *See Ets-Hokin*, 225 F.3d at 1079 n.10 (explaining that allowing trademarks works to be "preexisting works" under the Copyright Act "would disrupt divisions basic to intellectual property law").

Defendants further argue that the "trademark logos" are "subject to copyright protection" as pictorial or graphic works under 17 U.S.C. § 102(a)(5). (Defs.' Memo. at 14:10-11) In particular, they argue that Chevrolet's cross, Mercedes-Benz's peace symbol, and the typography of other logos are copyrightable. *See* Defs.' Request for Judicial Notice (Dkt. No. 43-3).[6] But under 37 C.F.R. § 202.1(a), the following are not subject to copyright: "Words and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring…. Typeface as typeface." *See Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1524 n. 7 (9th Cir. 1992) ("Sega's security code is of such *de minimis* length that it is probably unprotected under the words and short phrases doctrine."); *Chestang v. Yahoo Inc*., No. 2:11-CV-00989-MCE, 2012 WL 3915957, at *5 (E.D. Cal. Sept. 7, 2012) ("Titles, short phrases, and names are not copyrightable. The name 'LUMINOUS LYRICS' is not subject to

_____

[6] Asking the Court to take judicial notice of the wrong side of a disputed point of law is improper. Defendants' argument that various logs could be copyrighted (if someone bothered to apply for a copyright) does not qualify for any of the facts that may be judicial noticed under Fed. R. Evid. 201(b).

copyright as a matter of law, and therefore cannot serve as the basis for a copyright action." (internal citation omitted)); *Columbia Pictures Indus., Inc. v. Miramax Films Corp.*, 11 F. Supp. 2d 1179, 1185 (C.D. Cal. 1998) (concluding that tag line of movie was not copyrightable).  *See also See Compendium of Copyright Office Practices III* § 606 (stating that logo designs with "familiar symbols, such as a stop sign, a five pointed star, or a happy face" are not copyrightable).  The Court should therefore conclude that these tiles, short phrases and names are not copyrightable and are therefore not preexisting works under the Copyright Act.[7]

In sum, even if the Court were to consider the individual elements of the products being photographed (which it should not do under *Ets-Hokin*), the result would be the same.  The elements are not protectable; the photos are not "derivative" works.

### C.     Even If EVOX's Photos Were Derivative Works, They Were not Unauthorized.  Under Section 113(c), EVOX Was Not Required to Obtain a License from the Car Manufacturers to Make and Distribute Photos of Cars.

As discussed above in Section II(A)(1), defendants misapply Section 113(c) to themselves.  In addition, they fail to realize its application to EVOX if—as defendants argue (and EVOX contests)—EVOX's photos are derivative works because they are somehow based upon and transform copyrightable elements in the cars.

Section 113(c) gives EVOX the right to make and distribute photos of useful

---

[7] Defendants cite *Sadhu Singh Hamdad Trust v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.*, 503 F. Supp. 2d 577 (E.D.N.Y. 2007), which involved the copyright of a newspaper's name and masthead logo (including color scheme).  *Id*. at 581.  The opinion acknowledged that "some courts have concluded that a one or two-word trademark is not subject to copyright protection when the word is not original."  *Id*. at 588 (citing case law from several district and appellate courts).  But the court determined that whether the newspaper's logo/masthead warranted copyright protection was a "close question" that it could not resolve on summary judgment.  *Id*. at 589.

articles, such as cars, without permission from owners of copyrightable elements incorporated into those useful articles.  *First*, Section 113(c) applies "[i]n the case of a work lawfully reproduced in useful articles that have been offered for sale or other distribution to the public."  According to defendants, that is the situation here:  car logos, grilles and shapes were designed by the car manufacturers and then lawfully reproduced by the manufacturers <u>in</u> cars, which are useful articles.  (Defs.' Memo. at 11:20-15:7)  Furthermore, the cars are "offer[ed] for sale or other distribution." (*Id*. at 5:19-20)  *Second,* Section 113(c) provides that "copyright does not include any right to prevent the making, distribution, or display of pictures or photographs of such articles in connection with advertisements or commentaries related to the distribution or display of such articles."  As defendants acknowledge, EVOX is engaged in "product photography" (Defs.' Memo. at 19:1); and EVOX makes and distributes photos in connection with car advertisements or commentaries related to the distribution or display of cars.  *See* accompanying Declaration of Barry Thompson ¶ 4 ("EVOX is solely focused on making and distributing photos for use by Automotive Dealers, Automotive Research Portals and Auto Advertising Agencies in the process of advertising, marketing and selling cars.").  Consequently, EVOX does not need a license from owners of copyrights in works lawfully reproduced in the cars.  Just as Sony Music in *Major* (discussed above at Section II(A)(2)) did not violate a copyright by distributing an image of a video cover (even though the video cover had copyrightable elements), so, too, did EVOX not violate any copyright by distributing images of cars (regardless of whether the cars had copyrightable elements).

Defendants are trying to "indirectly assert[] [copyright] in useful articles through the copyright in a pictorial, graphic, or sculptural work that functions as the separable design of the article."  4 Patry on Copyright § 11:15.  That is what Section 113(c) was enacted to prevent.  *Id.*

Consequently, the Court should reject defendants' argument that EVOX's

1   photos are unauthorized, even if they are derivative works.

2   **D.     EVOX's Photos Are Not Slavish Copies.**

3        Defendants argue that EVOX's photos are not copyrightable because they are

4   merely "slavish" copies.  (Defs.' Memo. at 19:18-21:16.)  That argument is

5   frivolous and again foreclosed by binding Ninth Circuit precedent.

6        As described in EVOX's motion for partial summary judgment, EVOX's

7   photos satisfy the Copyright Act's originality requirement.  (Dkt. No. 34 at 5:13-19

8   & Dkt. No. 35 (SSUF) Nos. 4-7)   *See also* accompanying Declaration of J. Sedlik.

9   The Court need look no further than the *Ets-Hokin* case referenced above to

10  conclude that EVOX is correct that its photos are original and protectable.  *Ets-*

11  *Hokin*, *supra*, at 1077 ("In view of the low threshold for the creativity element, and

12  given that the types of decisions Ets-Hokin made about lighting, shading, angle,

13  background, and so forth have been recognized as sufficient to convey copyright

14  protection, we have no difficulty in concluding that the defendants have not met

15  their burden of showing the invalidity of Ets-Hokin's copyright, and that Ets-

16  Hokin's product shots are sufficiently creative, and thus sufficiently original, to

17  merit copyright protection."); *see also Schrock v. Learning Curve Int'l, Inc.,* 586

18  F.3d 513, 519 (7th Cir. 2009) ("Our review of Schrock's photographs convinces us

19  that they do not fall into the narrow category of photographs that can be classified as

20  'slavish copies,' lacking any independently created expression. To be sure, the

21  photographs are accurate depictions of the three-dimensional 'Thomas & Friends'

22  toys, but Schrock's artistic and technical choices combine to create a two-

23  dimensional image that is subtly but nonetheless sufficiently his own.  This is

24  confirmed by Schrock's deposition testimony describing his creative process in

25  depicting the toys.  Schrock explained how he used various camera and lighting

26  techniques…."). Consequently, the Court should conclude that EVOX's photos are

27  not slavish copies.

28  **E.     EVOX Is Not Attempting to Corner the Market on Standard**

1      **Techniques.**

2          Defendants claim that EVOX seeks to acquire a monopoly on certain

3  photographic techniques, such as using white or gray/white backgrounds.  (Defs.'

4  Memo. at 22:12-23:18.)  EVOX seeks no such thing.  It is not trying to foreclose

5  any technique from any other photographer.  Instead, EVOX seeks to prevent

6  defendants from taking EVOX's photos without EVOX's permission and using

7  them on defendants' website.  If defendants want to invest their own time, creativity

8  and effort to create photos, they are welcome to do so using whatever techniques

9  they choose.  Instead, defendants have chosen to steal other's photographs.[8]

10     **F.    EVOX's Copyrights Are Not Invalid For Failure to Disclose
             Mandatory Information to the Copyright Office.**

11

12         Defendants argue that EVOX's copyrights should be invalidated because it

13  "deliberately chose on all applications at issue *not* to disclose any pre-existing

14  work."  (Defs.' Memo. at 2:17-18.)  But, as discussed above, there are no pre-
   existing works to be disclosed in EVOX's photos.[9]  Moreover, the Ninth Circuit

15  requires proof of fraud on the Copyright Office in order to invalidate a copyright.

16  *See Lamps Plus, Inc. v. Seattle Lighting Fixture Co*., 345 F.3d 1140, 1144 (9th Cir.

17  2003) ("In this circuit, however, we have held that 'inadvertent mistakes on

18

_____

19  [8] Defendants cite *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), in which the

20  plaintiff unsuccessfully tried to use copyright law to prevent anyone else from using
   the plaintiff's technique of depicting jellyfish within a clear outer layer of glass.  *Id.*

21  at 811.  Defendants also cite *McDonald v. K-2 Indus., Inc.*, 108 F. Supp. 3d 135
   (W.D.N.Y. 2015), in which the plaintiff unsuccessfully tried to use copyright law to

22  prevent third parties from cherry-picking aspects of her designs of trees, Santa
   Claus, and paisley patterns to create "a product with an entirely different form or

23  intended purpose than plaintiff's designs."  *Id.* at 142-43.  EVOX does not assert
   similar claims.

24

25  [9] Defendants claims that EVOX is relying upon an advice-of-counsel defense

26  regarding its purported failure to disclose pre-existing works on copyright
   applications.  (Defs.' Mmo.a t 16:1-17:2)  But that is not accurate.  There are no pre-

27  existing works that EVOX failed to disclose.

28

registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless ... the claimant intended to defraud the Copyright Office by making the misstatement.' (quoting *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997)).[10]   The notion that EVOX was trying defraud the Copyright Office by hiding that the subjects of its photos were cars is absurd.  It was obvious from the images and titles included in EVOX's applications works, which identified the cars being photographed.  For example, EVOX's copyright registration number VA 1-690-913 was entitled "VIF6377 2010 Mini Cooper 2 Door Convertible" and included a picture of a Mini Cooper.  (Thompson Decl. Ex. B (Dkt. No. 40) at pp. 1-2)  Copyright registration number VA 1-697-493 was entitled "VIF6520 2010 Chevrolet Silverado 1500 LS 4 Door Pickup Crew" and included a picture of a Chevrolet Silverado.  *Id*. at pp. 3-4.[11]

Given that:  (1) EVOX's applications identified the cars in its titles and photos, (2) EVOX took the position before the Copyright Office that these cars were

---

[10] In *Lamps Plus*, the plaintiff claimed to the Copyright Office that a table lamp was an original sculpture.  *Id*. at 1144.  It failed to disclose that it did not design the component parts, such as the lamp base, but merely put them together.  *Id*. Nonetheless, the Ninth Circuit rejected the argument that the alleged copyright was invalid because the plaintiff believed that the work was an original sculptural work, not a compilation.  *Id*. at 1145.

[11] Defendants cite *Whimsicality, Inc. v. Rubie's Costume Co*., 891 F.2d 452 (2d Cir. 1989), which illustrates what may be required to find that a party defrauded the Copyright Office.  In that case, the plaintiff attempted to obtain copyright registration on costumes (which are generally not subject to copyright) by describing them to the Copyright Office as "soft sculpture."  *Id*. at 454.  In its application, the plaintiff avoided the word, "costumes," even though that was only the practical use of the items.  *Id*. at 454.  The plaintiff's attorney admitted that the word "costume" was avoided because it would have resulted in a denial of copyright registration.  *Id*.  Likewise, in *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980 (S.D.N.Y. 1980) (another case cited by defendants), the plaintiff hid from the Copyright Office that its plush toy designed was based upon a Japanese gorilla toy. *Id*. at 988.  In contrast, EVOX did not hide anything from the Copyright Office.

1   not "preexisting works," and (3) the Copyright Office granted all of EVOX's

2   applications, the Court should defer to the Copyright Office's determination that

3   EVOX's copyright registration are valid.  *See Marascalco v. Fantasy, Inc.*, 953 F.2d

4   469, 473 (9th Cir. 1991).

5   **G.     Contrary to Defendants' Argument, EVOX's DMCA Claim Does Not Fail.**

6   EVOX's DMCA claim does not fail for the reasons discussed in its motion for

7   partial summary judgment.  (Dkt. No. 34 at 9:17-11:1)

8   **H.     Contrary to Defendants' Argument, EVOX Has a Basis to Recover Direct and Indirect Profits.**

9

10   Under 17 U.S.C. § 504(b), "[t]he copyright owner is entitled to recover …

11   any profits of the infringer that are attributable to the infringement and are not taken

12   into account in computing the actual damages.  In establishing the infringer's

13   profits, the copyright owner is required to present proof only of the infringer's gross

14   revenue, and the infringer is required to prove his or her deductible expenses and the

15   elements of profit attributable to factors other than the copyrighted work."  A causal

16   nexus is generally required between the infringement and gross revenue.  *Fahmy v.*

17   *Jay-Z*, 835 F. Supp. 2d 783, 793 (C.D. Cal. 2011).  Such a causal nexus exists here.

18   During his deposition, Mr. Vahidi testified as follows:

19   Q. Why does Rent-A-Car show photos of cars on its website?

20   A. To give clients an idea of what type of car they'll be getting.

21   Q. Do you believe that photos help to attract business to Rent-A-Car?

22   A. Do I believe it helps?  Possibly.

23   (Gottfried Decl., Ex. B at 67:5-12)  Defendants have maintained their website for

24   years and around 10%  of reservations for defendants' rentals are booked through

25   their website.  (*Id*. at 12:8-12; 13:10-14)  The website is important enough to

26   defendants' business that they hired outside consultants to manage the website and

27   its online marketing.  (*Id*. at 16:24-17:4)  Moreover, in a recent declaration filed

28   with the Court, defendant Vahidi admitted that "any of EVOX's 149

640979.2

1  PHOTOGRAPHS that appeared on our site was in the context of an advertisement
2  for rental of a major band manufactured automobile."  (Dkt. No. 43-5 ¶ 3)
3  Defendants' argument that they engaged consultants and have maintained a website
4  with hundreds of photos for years—but that those photos are irrelevant to its
5  business—is implausible.

6       Defendants further argue that:  (1) EVOX's only contribution to the photos
7  was the addition of white or gray/white backgrounds, and (2) there is no connection
8  between customers' decision to rent cars and the photos' backgrounds.  (Defs.'
9  Memo. at 24:9-28.)  But EVOX's contribution to the photos consisted of far more
10  than the background.  *See* Declaration of J. Sedlik (Dkt. No. 38).  Moreover, the
11  idea that there is no connection between EVOX's photos and defendants' business is
12  belied by defendants' own testimony.  Defendants did not use only a handful of
13  EVOX's photos:  they hand-selected 149 of EVOX's photos from the Internet (from
14  among the countless of photos of cars online) because they were "nice, clean
15  photos," they were "able to use [EVOX's photos] for our website," and they liked
16  the way that they were angled.  (Gottfried Decl., Ex. B at 44:2-22; 48:12-49:4.)  A
17  jury should be allowed to weigh this evidence and other evidence that EVOX is
18  seeking to obtain in discovery regarding defendants' profits from their infringement.

19       Finally, at best, the damages issue raised by defendants should be deferred.
20  EVOX served a Request for Production on defendants that asked for documents
21  relating to "payments that YOU have received in connection with the PHOTOS."
22  (Gottfried Decl., Ex. E at Response to RFP No. 1)  Defendants refused to produce
23  those documents.  *Id.*  The parties are conferring whether this issue needs to be
24  raised with the Magistrate Judge.  But defendants' claim that EVOX cannot prove
25  defendants' revenues associated with the photos while defendants are stonewalling
26  discovery on this issue is unreasonable and unduly prejudicial.

27  **III.   CONCLUSION**
28       The Court should deny defendants' motion for summary judgment.

640979.2

-25-

1  DATED:  June 6, 2016                BROWNE GEORGE ROSS LLP
2                                           Keith J. Wesley
                                            Jonathan L. Gottfried
3

4                                      By _____/s/ Jonathan Gottfried_____
5                                           Jonathan Gottfried
                                       Attorneys for EVOX Productions, LLC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

     At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 2121 Avenue of the Stars, Suite 2400, Los Angeles, CA 90067.

On June 6, 2016, I served true copies of the following document(s) described as **PLAINTIFF EVOX PRODUCTIONS, LLC'S OPPOSITION TO CALIFORNIA RENT-A-CAR, INC.'S MOTION FOR SUMMARY JUDGMENT OR FOR PARTIAL SUMMARY ADJUDICATION** on the interested parties in this action as follows:

DEL TONDO & THOMAS              Attorneys for Defendants
Douglas J. Del Tondo
2201 Dupont Drive, Suite 820
Irvine, California 92612
Tel 949.851.0558
Fax 949.266.9621
doug@deltondothomas.com

     **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

     Executed on June 6, 2016, at Los Angeles, California.

/s/ Jacqueline E. Baker
Jacqueline E. Baker

640979.2