Douglas J. Del Tondo, Esq.  (SBN 100563)
  doug@deltondothomas.com
DEL TONDO & THOMAS
Attorneys at Law
2201 Dupont Drive, Suite 820
Irvine, California 92612
Tel. (949) 851-0558 ✦ Fax: (949) 266-9621

Attorneys for Defendants, CALIFORNIA RENT-A-CAR, INC.,
and STEVE VAHIDI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA,

## WESTERN DIVISION

| | |
|---|---|
| EVOX PRODUCTIONS, LLC, a California limited liability company, | CASE NO. 2:15-cv-08046 MWF (RAOx) |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION** ] |
| v. | |
| CALIFORNIA RENT-A-CAR, INC., a California corporation, and STEVE VAHIDI, an individual, | Judge:    Hon. Michael W. Fitzgerald<br>Date:     June 27, 2016<br>Time:     10:00 a.m.<br>Courtroom: 1600 |
| Defendants. | Trial Date:   January 10, 2017 |

Defendants, CALIFORNIA RENT-A-CAR, INC., and STEVE VAHIDI,

respectfully submit the following Opposition to Plaintiff EVOX PRODUCTIONS,

LLC ("EVOX")'s Motion for Summary Adjudication, entitled in full

PLAINTIFF EVOX PRODUCTIONS, LLC'S NOTICE OF MOTION AND MOTION

FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AGAINST

DEFENDANTS CALIFORNIA RENT-A-CAR, INC. AND STEVE VAHIDI;

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

THEREOF; DECLARATIONS OF JONATHAN GOTTFRIED, BARRY

THOMPSON & JEFFREY SEDLIK, Doc. Control No. 34.

1

**TABLE OF CONTENTS**

PAGE

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   *Evox Lacks Any Licenses, Let Alone A Crucial Exclusive License*. . . . 1

     B.   *Evox's Suppression of Mandatory Disclosures to Copyright Office.*. . . 1

     C.   *Section 113(c) Protected Use of California Rent A Car*. . . . . . . . . . . 2

     D.   *The Automobile Designs and Logos Are Original Works* . . . . . . . . . . 2

     E.   *Lack of Originality of Evox's Photographs.*. . . . . . . . . . . . . . . . . . . 3

     F.   *No Intent to Conceal Copyright Infringement under DCMA*. . . . . . . . . 3

II.  DEFENDANTS HAD A RIGHT OF USE UNDER SECTION 113(c).. . . . . . 3

     A.   *A Brief Synopsis of Cross-Motion on Section 113(c)*. . . . . . . . . . . . . 3

     B.   *Section 113(c) Is A 'Specified Exemption' From Copyright Rights.*. . . . 4

III. EVOX LACKS A NECESSARY EXCLUSIVE LICENSE TO SUE.. . . . . . . 5

     A.   *The Newly Discovered Hyperquest Decision*        . . . . . . . . . . . . . . 5

     B.   *The Holding in Hyperquest.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     C.   *Section 501(b) Requirement of An Exclusive Right*. . . . . . . . . . . . . . 6

     D.   *Evox's Use of Preexisting Copyright*
          *Works In Their Photographs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     E.   *Exclusive Rights of Copyright Owners*
          *of Images in Evox Photographs* . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     F.   *No Standing To Sue Upon*
          *Non-Exclusive License of Such Rights.*. . . . . . . . . . . . . . . . . . . . . . 9

IV.  EVOX CANNOT SUE ON INFRINGING REGISTRATIONS.. . . . . . . . . 11

     A.   *Evox Has No Licenses,*
          *Oral or Written, Non-Exclusive or Exclusive* . . . . . . . . . . . . . . . . . . 11

     B.   *The Auto & Logo Designers' Exclusive Rights Under Section 106*. . . . 12

     C.   *Evox Does Not Own The Rights Under Section 106 It Usurps.* . . . . . . 13

     D.   *The Court Should Give*
          *No Evidentiary Value to Evox's Registrations.* . . . . . . . . . . . . . . . . . 14

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PAGE

    E.   *Evox's Use of Preexisting Copyright*
        *Works In Their Photographs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        1.   THE INFRINGING PHOTOGRAPHS ON SCULPTURE ART IN ALFRED
             BELL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        2.   PHOTOGRAPHER INFRINGES UPON ANOTHER'S DERIVATIVE USE
             RIGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.    EVOX'S REGISTRATIONS ARE ENTIRELY INVALID. . . . . . . . . . . . . 19

VI.   EVOX'S DMCA CLAIM FAILS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VIII. EVOX'S PHOTOS LACK ORIGINALITY. . . . . . . . . . . . . . . . . . . . . . . . 23

    A.   *The Wiki Evox Submitted*
        *Supports Slavish Copying Took Place.* . . . . . . . . . . . . . . . . . . . . . . . . 23

    E.   *The Plaintiff's Expert is Mistaken*
        *On What He is Supposed to Look At.* . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IX.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

CASES                                                                                        PAGE

*Alfred Bell & Co. v. Catalda Fine Arts*,
   74 F.Supp. 973 (S.D.N.Y. 1947)  .. . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12, 17

*Alfred Bell & Co. v. Catalda Fine Arts, Inc*., 191 F.2d 99 (2d Cir. 1951) .  .. . . .  17-*18*

*Anderson v. Stallone,* No. 87-0592,
   1989 U.S. Dist. LEXIS 11109 (C.D. Cal. 1989). . . . . . . . . . . . . . . . 11, 13, 15-16

*ATC Distribution Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.,*
   402 F.3d 700 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Bridgeman Art Library v. Corel Corp Corp*., 36 F.Supp.2d 191
   (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Bryant v. Gordon,* 483 F.Supp.2d 605, 611 (N.D.Ill. 2007). . . . . . . . . . . . . . . . . 3,4

*Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.,*
   259 F.3d 1186 (9th Cir. Cal. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Effects Assocs. v. Cohen*, 908 F.2d 555 (9th Cir. 1990).. . . . . . . . . . . . . . . . . . . 6, 8, 9

*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000) . . . . . . . . . . . . . 7, 11, 15

*Ets-Hokin v. Skyy Spirits, Inc*., 323 F.3d 763 (9th Cir. 2003) .. . . . . . . . . . . . . . . . . 25

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991) . . . . . . . . . 5,13, 23-24

*Felix the Cat Prods, Inc. v. New Line Cinema Corp*.,
    CV 99-9339, 2000 U.S. Dist. LEXIS 21763 (C.D. Cal. 2007)  .. . . . . . . . . . . . 8

*Gaylord v. United States,* 777 F.3d 1363  (Fed.Cir. 2015). . . . . . . . . . . . . . . . . 11, 18

*Gener-Villar v. Adcom Group, Inc.,* 560 F.Supp.2d 112 (D.P.R. 2008). . . . . . . . . . 17

*Gordon v. Nextel Communs*, 345 F.3d 922 (6th Cir. 2003) .. . . . . . . . . . . . . . . . . 23

*Harper & Row, Publrs. v. Nation Enters*., 471 U.S. 539 (1985). . . . . . . . . . . . . . 4, 7

*Hyperquest, Inc. v. N'Site Sols., Inc*., 632 F.3d 377 (7th Cir. 2011). . . . 5-6, 8, 9, 10, 15

*Imageline, Inc. v. CafePress.com. Inc*., No. CV 10-9794,
   2011 U.S. Dist. LEXIS 39828 (C.D. Cal. Apr. 6, 2011) .. . . . . . . . . . . . . . . 22

1   *John Wiley & Sons, Inc. v. DRK Photo*,

2        998 F.Supp.2d 262 (S.D.N.Y. 2014). ...................................... 15

3   *J. Thomas Distribs., Inc. v. Greenline Distribs., Inc.,* No. 95-2100,

4        1996 U.S. App. LEXIS 29035 (6th Cir. 1996) ......................... 23

5   *Kolody v. Simon Mktg.,* 97 CV 0190,

6        1998 U.S. Dist. LEXIS 14229 (N.D.Ill. 1998). ........................ 23

7   *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.* 345 F.3d 1140 (9th Cir. 2003). ... 20

8   *L. Batlin & Son, Inc. v. Snyder,*  536 F.2d 486 (2d Cir. 1976). .................... 6

9   *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, CV 10-9794,

10       2014 U.S. Dist. LEXIS 92809 (N.D.Ill. 2014). ......................... 22

11  *Maljack Productions, Inc. v. GoodTimes Home Video Corp*.,

12       81 F.3d 881(9th Cir. 1996) ........................................... 6-7

13  *Meshwerks, Inc. v. Toyota Motor Sales U.S.A.,*

14       528 F.3d 1258  (10th Cir. 2008). .................................. 24-25

15  *Minden Pictures, Inc. v. John Wiley & Sons, Inc*.,

16       795 F.3d 997 (9th Cir. 2015) ..................................... 8, 15

17  *Morris v. Business Concept Inc*., 99 Civ. 59,

18       2000 U.S. Dist. LEXIS 3835 (S.D.N.Y. 2000) ........................... 7

19  *Pickett v. Prince*, 207 F.3d 402 (7th Cir. 2000) .. ............... 11, 13-14, 16-17

20  *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F.Supp. 980 (S.D.N.Y. 1980) ......... 21

21  *Sobhani v. @Radical Media, Inc*.,

22       257 F. Supp. 2d 1234 (CD. Cal. 2003) ..................... 8, 11,13, 14, 25

23  *S.O.S., Inc. v. Payday, Inc*., 886 F.2d 1081 (9th  Cir. 1989).. .................... 7

24  *Thron v Harpercollins Publrs., Inc.,*

25       01 Civ. 5437,  2002 U.S. Dist. LEXIS 13670 (S..N.Y. 2002). .............. 21

26  *Twentieth Century Fox Film Corp. v. Marvel Ents*.,

27       155 F. Supp. 2d 1 (S.D.N.Y. 2001) ..................................... 8

28  *United States v. Taxe*, 540 F.2d 961 (9th Cir. 1976) .......................... 13

*Whimsicality, Inc. v. Rubie's Costume Co..* 891 F.2d 452 (2d Cir. 1989) . . . . . . . 19, 21

STATUTES

17 U.S.C. § 101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

17 U.S.C. § 102(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17 U.S.C. § 102(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

17 U.S.C. § 103. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

17 U.S.C. § 105. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

17 U.S.C. § 106. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

17 U.S.C. § 106(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15, 17, 18

17 U.S.C. § 107. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17 U.S.C. § 113(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3-4

17 U.S.C. § 115. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

17 U.S.C. § 204(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,11

17 U.S.C. § 408(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17 U.S.C. § 409 (9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19, 21

17 U.S.C. § 410(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

17 U.S.C. § 501(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 14-15, 18, 20-21

17 U.S.C. § 1202(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-23

CIRCULARS FROM THE COPYRIGHT OFFICE

Circular 14, Copyright in Derivative Works and Compilations . . . . . . . . . . . . . . . 5

LEGISLATIVE AUTHORITIES

House Report No. 94-1476 under 17 U.S.C. §113 . . . . . . . . . . . . . . . . . . . . . . . . 16

TREATISE AUTHORITIES

Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 3.06 (2015). 12-13, 20

# MEMORANDUM OF POINTS & AUTHORITIES

## INTRODUCTION

Defendants, CALIFORNIA RENT-A-CAR, INC., and STEVE VAHIDI, its President (hereinafter collectively referred to as "Defendant CALRAC"), oppose Plaintiff EVOX PRODUCTIONS, LLC's ("EVOX")'s motion for summary adjudication of liability for copyright infringement and violation of the Digital Millennium Copyright Act ("DMCA") in relation to the use of the 149 PHOTOGRAPHS at issue here.[1]  By prior agreement with EVOX, Defendant CALRAC filed concurrently with EVOX's motion its own cross-motion for summary judgment and / or summary adjudication. It is hereafter referred to as CROSS-MSJ MOTION.

## I.   STATEMENT OF FACTS.

### A.   *Evox Lacks Any Licenses, Let Alone A Crucial Exclusive License.*

In the 149 PHOTOGRAPHS, EVOX uses the designs of automobiles and trademark logos without license from the copyright owners of these automobile and logo designs. (DEFENDANTS' STATEMENT OF UNCONVERTED FACTS IN OPPOSITION[2] ## 16-21, hereafter "D.SUF.OPP.")

Plaintiff EVOX makes its customers obtain the licenses necessary from the automobile manufacturers to use the images of the automobiles and trademarks in the photographs. D.SUF.OPP. ##17-20. EVOX did not have a license from the automobile manufacturers to photograph their vehicles, nor did it have a exclusive license to do so. D.SUF.OPP. #16. In addition, because EVOX did not have any license, it *de facto* could not have a license in writing. Had EVOX an *exclusive* license of a derivative use right from an automobile manufacturer, it would have to be in writing

---

[1] The 149 PHOTOGRAPHS are attached as Exhibit 1 to the Declaration of Douglas Del Tondo in support of the CROSS-MSJ MOTION.

[2] It is part two of DEFENDANTS' STATEMENT OF [1] GENUINE DISPUTES OF MATERIAL FACT; AND [2] UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION, CONCURRENTLY FILED, at pages 10-25.

1  under section 204(a). Without a written exclusive license of such a right, EVOX has

2  no standing to sue a third-party under section 501(b) for what is clearly an exercise by

3  EVOX of a derivative use right belonging to the automobile manufacturers to make

4  photographs and license their use to the public. (Hereafter, all statutory references are

5  to Title 17 unless otherwise indicated.) Se Part II below.

6        **B.  _Evox's Suppression of Mandatory Disclosures to Copyright Office_**.

7      Plaintiff EVOX deliberately decided to not disclose to the Copyright Office its

8  photographs were based upon preexisting works of the designs and logos of major

9  manufacturers. D.SUF.OPP. ## 66-76. (Such a disclosure is required under section

10  409(9).) Plaintiff EVOX's 30(b)(6) witness refused to explain why, claiming EVOX

11  relied upon advice of counsel in not making these disclosures. EVOX then refused in

12  deposition to waive the privilege to provide an explanation. D.SUF.OPP. ##69-76.

13        **C.  _Section 113(c) Protected Use By California Rent A Car._**

14      Defendant CALRAC has a privilege under section 113(c) to use even copyright

15  registered photographs belonging to another to advertise vehicles or other useful

16  articles for rent. Defendant CALRAC only used the 149 PHOTOGRAPHS for

17  purposes of renting automobiles in public advertising. D.SUF.OPP. ##5-15. Hence,

18  Defendant CALRAC engaged in exempted right to use even copyrighted

19  "photographs" as permitted under section 113(c).

20        **D.  _The Automobile Designs and Logos Are Original Works._**

21      EVOX was making an unauthroized use of copyright-protected automotive designs

22  and trademark logos belonging to the automobile manufactuers in each of he 149

23  PHOTOGRAPHS. Each of these automobile designs are original and hence copyright

24  protected automatically upon fixation in a tangible form. This first happened when the

25  automobiles were each produced in what is known as the final PRODUCTION

26  MODEL D.SUF.OPP. ## 28-40.

27      As to the well-recognizable manufacturers' logos which appears in 95 of the 149

28  PHOTOGRAPHS, the Court is requested here to grant a Request for Judicial Notice of

1  these trademarks and their graphical quality. This Request was submitted in support of
2  the CROSS-MSJ MOTION. The Court is requested to recognize the originality of
3  each of these famous logos, and hence their automatic protection in copyright.

4             **E.  _Lack of Originality of Evox's Photographs._**

5       EVOX's product photographs fit squarely within the classic unprotectible category
6  of photographs known as 'slavish copies.' In CALRAC's CROSS-MSJ MOTION at
7  pages 4-5, Defendant CALRAC summarized the Declaration of its photography expert
8  Mr. Takata, as well as the admissions of EVOX's 30(b)(6) that support these
9  photographs are slavish copies. The supporting facts here are also in D.SUF.OPP.
10 ##77-99. In addition, EVOX's own motion provides more proof —  EVOX's Wiki
11 instructions. EVOX summarizes the WIKI in EVOX's SUF ## 4,5 & 7. These facts as
12 admitted by EVOX further proves  slavish copying. EVOX states that the
13 photographers must use the "same criteria" in each photograph based upon identical
14 preset posing, camera settings and lighting. The photographs are thus entirely the
15 _mechanical_ output of an equivalent to a xerox machine where instead of pressing a
16 copy button, someone snaps a photograph. This process is the antithesis of a creative
17 spark necessary to show originality.

18            **F.  _No Intent to Conceal Copyright Infringement under DCMA._**

19      Defendant CALRAC believed that it had a right to use photographs it could find
20 on the internet for advertising rentals.. Defendant's belief was reasonable because it is
21 consistent with use rights granted by Congress in Section 113(c), as explained in Part
22 II _infra_.  In addition,  Defendant CALRAC did not know at the time it removed the
23 name EVOX IMAGES from the photographs that there was a copyright symbol
24 affixed to the E of EVOX which was removed at the same time. In the size of the
25 photograph downloaded by Defendant, it was illegible. D.SUF.OPP. #102.

26 **II. DEFENDANTS HAD A RIGHT OF USE UNDER SECTION 113(C).**

27       **A.  _A Brief Synopsis of Cross-Motion on Section 113(c)._**

28      As more fully set forth in Defendants' CROSS-MSJ MOTION at pp. 7-10,

1  CALRAC had a right under section 113(c)[3] to offer for sale or other distribution (*e.g.*,

2  rentals) photographs that Defendant either made itself, or could find – even

3  copyrighted photographs – as long as the use was limited to advertising a useful article

4  for sale or rental.  Automobiles qualify as such articles due to their utilitarian function.

5  (§101). This is supported directly by the interpretation of section 113(c) in *Bryant v.*

6  *Gordon,* 483 F.Supp.2d 605, 611 (N.D.Ill. 2007).  This decision recognized that

7  section 113(c) grants a right to a seller of useful articles to use copyrighted photos

8  depicting such  articles taken by a professional photographer when defendants used

9  them in advertising for sale of those useful articles through the Internet. As *Bryant*

10  held, permission is granted by law – section 113(c). The *Bryant* Court explained:

11   "The ***rights of a copyright owner like [product photographer] Bryant***
12   "***do[] not include*** any right to prevent the making, distribution, or
     display of pictures or photographs of [useful] articles in connection
     with advertisements . . . related to the distribution or display of such
13   articles . . . ." 17 U.S.C.§ 113(c). A "useful article" is one that has an
     intrinsic utilitarian function. *Id.* § 101. *Id.*, 484 F.Supp. 2d at
14   613.(Emphasis added).

15   **B. *Section 113(c) Is A 'Specif Exemption' From Others' Copyright Rights***.

16  The Court in *Harper & Row, Publrs. v. Nation Enters*., 471 U.S. 539, 557, fn. 6

17  (1985) recognized that Congress made comparable "specific exemptions" akin to fair

18  use for "public interest" reasons, *e.g.*, §105 (no copyright in Government work).

19  Section 113(c) thus represents another such example where Congress recognized a

20  public interest justified conferring a 'specific exemption' from copyright owners'

21  rights. Thus Defendant CALRAC had a right to do what it did.

22   **III.   EVOX LACKS A NECESSARY EXCLUSIVE LICENSE TO SUE.**

23   **A. *The Newly Discovered Hyperquest Decision***.

24  The CROSS-MSJ MOTION at 9:27-10:2 and 14:13-17 asserted that EVOX must

25  have an exclusive license in writing in order to sue Defendant CALRAC. This means

26  _____

27   [3] (c) In the case of a work lawfully reproduced in ***useful articles*** that have been
     ***offered for sale or other distribution to the public***, copyright does ***not include any***
28   ***right to prevent the making, distribution, or display of pictures or photographs of***
     ***such articles in connection with advertisements***.... (Emphasis added.) (17 U.S.C. §
     113(c)).

_____

1    the automobile manufacturers must grant EVOX one of the exclusive rights under

2    section 106, (*e.g.*, the right to make a derivative use by means of photographs) and the

3    manufactuers must promise that only EVOX will have that derivative use. In support,

4    Defendant CALRAC previously relied upon statutory construction. However,

5    subsequently, Defendant CALRAC has discovered a Seventh Circuit decision in

6    *Hyperquest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 383 (7th Cir. 2011) that directly

7    supports this same conclusion. The Seventh Circuit held that the Copyright Act

8    requires such an exclusive license from the copyright owner in order for a Plaintiff to

9    sue a third party upon a claim that turns on the Plaintiff's right to make a copy or a

10   derivative use of a copyright owner's work.

11   　　Below Defendant CALRAC reviews the analysis in *Hyperquest,* as this single

12   decision can determine the outcome of all the pending motions.

13   　　　　**B.   *The Holding in Hyperquest*.**

14   　　The Seventh Circuit in *Hyperquest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 383 (7th

15   Cir. 2011)  held that a Plaintiff cannot sue a third-party on a non-exclusive license to

16   either copy or to make a derivative use (which the Copyright Office calls "the

17   adaptation right")[4] of preexisting material. To be able to sue a third party, the Plaintiff

18   must have obtained first an exclusive license to make a derivative use or make copies.

19   The Court reasoned that section 501(b) limits copyright infringement suits to only

20   actions upon which Plaintiff has one of the exclusive rights under section 106(1)-(3)

21   for the rights the Plaintiff is pursuing, *e.g.,* on a derivative use of someone else's

22   copyright.

23   　　Without such an exclusive license, the Court in *Hyperquest* said there is no

24   standing under section 501(b) to sue a third-party for infringement.

25   　　Because the Plaintiff Hyperquest had a non-exclusive license to make copies or a

26   derivative work (modifications it made to software), the Plaintiff Hyperquest lacked

27   _____

28   　　　[4] Circular 14 of the Copyright Office says: "The derivative work right is often
referred to as the ***adaptation right***." See Circular 14, Copyright in Derivative Works
and Compilations, page 1, at http://www.copyright.gov/circs/circ14.pdf

1  the necessary exclusive right to sue a third-party for infringing copies of the software

2  or modifications (derivative uses) made by Plaintiff.

3      EVOX admits having no licenses at all for making these photographs from the

4  owners of the automotive designs and logos including no exclusive license.

5  D.SUF.OPP. ##16-21.

6      An exclusive license is crucial to EVOX's standing here. It has engaged in either a

7  copy or derivative use of another's copyright protect work. EVOX's failure to have

8  any license from the automobile manufacturers means *de facto* it has no such license

9  in writing. A written license is necessary to transfer an exclusive license to make

10  copies or a derivative use, due to section 204(a). *Effects Assocs. v. Cohen*, 908 F.2d

11  555, 556, 558 (9th Cir. 1990).

12      Then without a written exclusive license, EVOX cannot have an "exclusive right"

13  required under section 501(b) to sue on what is in fact a derivative use right to make

14  photographs belonging to the automobile manufacturers.

15      Next follows a detailed discussion of the reasoning in *Hyperquest, Inc. v. N'Site*

16  *Sols., Inc.*, 632 F.3d 377, 383 (7th Cir. 2011). It begins with looking at section 501(b).

17          **C.  _Section 501(b) Requirement of An Exclusive Right_**.

18      Section 501(b) of the Copyright Act defines under what circumstances a copyright

19  owner has standing to bring a suit against infringing parties. For a plaintiff to assert a

20  claim for copyright infringement, a Plaintiff must be (1) the "legal or beneficial owner

21  of an ***exclusive*** right under a copyright" and (2) entitled "to institute an action for any

22  infringement of that particular right committed while he or she is the owner of it."

23      When the Plaintiff lacks section 501(b) rights, this is the same as saying Plaintiff

24  lacks the necessary exclusive ***ownership*** rights in copyright to institute suit. *See,*

25  *Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881,886 (9th Cir.

26  1996)(lack of valid ownership in copyright is lack of standing under section 501(b)).

27      The "ownership of a valid copyright" is the second element other than "originality"

28  that is necessary to pursue copyright infringement.  *Feist Publ'ns, Inc. v. Rural Tel.*

1    *Serv. Co.* (1991) 499 U.S. 340, 361.

2             **D.  *Evox's Use of Preexisting Copyright Works In Their Photographs***

3      EVOX shamelessly admits its photographs are based upon images of designs of

4 automobiles (and necessarily their trademark logos) that belong to others.  EVOX

5 SUF #2. There is no dispute possible this is happening. D.SUF.OPP. ## 21, 32-33. In

6 fact, the copying or derivative use is self-evident by simply looking at each of the 149

7 PHOTOGRAPHS (Ex. 1 to Del Tondo Decl.)(Doc. Control No. 43-7.)

8      At the same time, EVOX admits it had no license from the owners of the

9 automobile designs and logos to make photographs of them, and license their use to

10 others. D.SUF.OPP. ## 16-21.  EVOX admits it did not have a license from these

11 owners to exclusively license such photographs to the public. D.SUF.OPP. #16.

12      Such designs and logos satisfy the minimal originality necessary to be copyright

13 protected. D.SUF.OPP. ##28-61. *See, L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486,

14 490-491 (2d Cir. 1976)  ("it has been established that ***mass-produced commercial***

15 ***objects*** with a ***minimal element of artistic craftsmanship*** may satisfy the statutory

16 requirement of such a work.")

17      This copyright protection of these preexisting works arises "automatically" under

18 the 1976 Act from the moment of the "time of their creation."[5]  *Harper & Row,*

19 *Publrs. v. Nation Enters.,* 471 U.S. 539, 552 (1985)("Among [the 1976 Act's] other

20 innovations, it...extended statutory protection to all works ***from the time of their***

21 ***creation***.")

22      As a result, EVOX is suing upon either a copy or a derivative use of the copyright

23 protected automobile designs owned by another.

24      In addition, EVOX also admits it had no license to use the trademark logos in the

25

26       [5] Upon fixation in tangible form, the Court in *S.O.S., Inc. v. Payday, Inc*., 886

27 F.2d 1081, 1085 (9th  Cir. 1989) said that protection begins upon fixation: "Copyright protection ***subsists from the moment*** the work is 'fixed in any tangible medium of expression.' 17 U.S.C. § 102(a). Registration is not a prerequisite to a valid copyright,

28 although it is a prerequisite to suit. 17 U.S.C. § 408(a), § 411." Likewise, the Court in *Morris v. Business Concept Inc*., 99 Civ. 59, 2000 U.S. Dist. LEXIS 3835 (S.D.N.Y. 2000) at *13-14 said: "[C]opyright in a work now vests ***automatically*** in the  author once the work is 'fixed in a tangible medium of expression.'"

1   95 times they appear in the 149 PHOTOGRAPHS. D.SUF.OPP. ##19-21. These logos

2   are graphical illustrations protected under section 102. The Court can judicially notice

3   their trademark logo status, and their originality due to their variableness and

4   distinctiveness from other marks. See Defendant's REQUEST FOR JUDICIAL

5   NOTICE.[6]

6       As a result, in 95 instances, EVOX is suing upon photographs that EVOX either is

7   copying the logo designs or making a derivative use of the logo designs. D.SUF.OPP.

8   ##55-61.

9             **E.** ***Exclusive Rights of Copyright Owners of Images in Evox Photographs.***

10      In order to sue for copyright infringement on such uses, EVOX must prove that it

11  exclusively has one of the exclusive rights granted under section 106 to the copyright

12  owners of these automotive designs and logos which EVOX's photographs were based

13  upon.  *Hyperquest, Inc. v. N'Site Sols., Inc*., 632 F.3d 377, 383 (7th Cir. 2011).

14      The Ninth Circuit recently explained in *Minden Pictures, Inc. v. John Wiley &*

15  *Sons, Inc*., 795 F.3d 997, 1002 (9th Cir. 2015) that only an exclusive ***licensee*** of an

16  exclusive §106 right can sue in infringement upon such rights. It also explained that

17  the term  "exclusive" licensee means that the licensee was promised by the copyright

18  owner  "that the same permission will not be given to others."[7]

19      An exclusive license to be valid must also be in writing. *Effects Assocs. v. Cohen*,

20  908 F.2d 555, 556, 558 (9th Cir. 1990).

21

22  ───────────────

23     [6] On the Cross-Motion, Defendant CALRAC filed a Request for Judicial Notice
of each mark in the photographs and that their graphics are subject to automatic
copyright protection. Judicial notice of well-known copyright protected material is

24  well-established in copyright cases. *Sobhani v. @Radical Media, Inc*., 257 F. Supp. 2d
1234, 1235-36 n.1 (CD. Cal. 2003) (judicially noticing the film Castaway and
commercials for the fast food chain Jack-in-the-Box); *Felix the Cat Prods, Inc. v. New*

25  *Line Cinema Corp*., CV 99-9339, 2000 U.S. Dist. LEXIS 21763 at 4 (C.D. Cal. 2007)
(judicially noticing the film Pleasantville); *Twentieth Century Fox Film Corp. v.*

26  *Marvel Ents*., 155 F. Supp. 2d 1, 41 n.71 (S.D.N.Y. 2001) (judicially noticing the film
Star Wars).

27
   [7] The Court in *Minden*, 795 F.3d at 1005 (9th Cir. 2015) explained that an

28  "exclusive" license "permits the licensee to use the protected material for a specific
use and ***further promises that the same permission will not be given to others***."
*I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). (*Minden*, 795 F.3d at 1005
(emphasis added.)

Here, section 106 identifies three exclusive rights that one or the other is necessarily being exercised by EVOX in preparing photographs of another party's copyright protected works – the right

> (1) to **reproduce** the copyrighted work in **copies** or phonorecords;
> (2) to **prepare derivative works based upon the copyrighted work**;
> (3) to **distribute copies** ...to the public by sale or other transfer of ownership, or by rental, lease, or lending;[8]

## F. _No Standing To Sue Upon Non-Exclusive License of Such Rights._

In _Hyperquest, Inc. v. N'Site Sols., Inc_., 632 F.3d 377, 383 (7th Cir. 2011), Plaintiff Hyperquest was given a license by the copyright owner to use source code of a computer program that processed insurance claims, and to modify the same. However, it was a non-exclusive license. Hyperquest sued defendants for infringing on the alleged rights to copy, distribute copies, or on Hyperquest's derivative use of the software.  The District Court dismissed because Plaintiff lacked the statutory standing to sue on any of such rights under section 501(b)(infringement must be based upon an "exclusive" right owned by the claimant). Hyperquest did not have any exclusive right transferring any right to copy or distribute copies, or to make a derivative use of the software upon which Hypertext was suing.

The Seventh Circuit affirmed. Its opinion first reviewed the three exclusive rights under section 106 listed above. The Court found that Plaintiff was suing on several such section 106 rights — to copy, modify (prepare a derivative use), or distribute copies of the copyrighted software at issue. However, at the same time, the Court affirmed the lower court determination that Hyperquest did not have an exclusive license from the copyright owner to do any of these things.

The Court in _Hyperquest, Inc. v. N'Site Sols., Inc_., 632 F.3d 377, 382 (7th Cir. 2011) explained that as a result, Hyperquest had no ownership interest to support its suing a third-party for infringement. However, Hyperquest alleged rights to make derivative uses, copies or to distributed copies. The Seven Circuit explained the limitations on Hyperquest's standing to sue a third party on such rights if not properly

---

[8] Three other exclusive rights under section 106(4),(5) & (6) are not at issue here – rights involving phonorecords, sound recordings, literary, and dramatic works.

1 transferred exclusively to it by the copyright owner of the software:

> 2 The three rights [under section 106] that are at issue in this case are the
> 3 right to reproduce the copyrighted work (#1), the ***right to prepare derivative works based upon the copyrighted work*** (#2), and the right
> to distribute copies of the work to the public (#3). These rights are
> 4 divisible, meaning that the owner may convey each one of them to a
> different person. See 17 U.S.C. § 201(d)(2) ("Any of the exclusive
> 5 rights comprised in a copyright, including any subdivision of any of
> the rights specified in section 106, may be transferred . . . and owned
> 6 separately."). Thus, if the ***exclusive right to reproduce*** (meaning
> exclusive of the grantor as well as all third parties) were transferred to
> 7 A, the ***exclusive right to prepare derivative works*** were given to B,
> and the exclusive right to distribute copies to the public were granted
> 8 to C, each transferee ***would be entitled to sue for infringement of its particular right***. The ***corollary*** to this rule is that a person holding a
> 9 non-exclusive license is ***not entitled to complain about any alleged infringement of the copyright***. See *I.A.E., Inc. v. Shaver*, 74 F.3d 768,
> 10 775 (7th Cir. 1996); 17 U.S.C. § 101 (defining a "transfer of copyright
> ownership"); id. § 501(b) (providing that only the legal or beneficial
> 11 owner of an exclusive right may institute an action).

12 Because none of these rights were properly transferred to Hyperquest by an
13 exclusive license, Plaintiff Hyperquest could not sue a third party on what remained
14 the exclusive rights belonging solely to the copyright owner of the software.Here,
15 EVOX has registered a copyright on photographs that EVOX has used as if it can
16 freely copy or make derivative uses (*e.g.*, photographs) without any license or even
17 permission from the automobile manufacturers. (D.SUF.OPP. ##16-21).

18 The consequence to EVOX is that because "a person holding a non-exclusive
19 license is ***not entitled to complain about any alleged infringement of the copyright***"
20 (*Hypertext*, *supra*), then EVOX who holds no license at all has no standing to sue
21 anyone for infringing what is truly EVOX's exercise of a derivative use right of the
22 automobile manufacturers. EVOX's suit must be dismissed for lack of an ownership
23 of the exlusive right necessary to sue under section 501(b).

24 **IV.  EVOX CANNOT SUE ON INFRINGING REGISTRATIONS.**

25     **A.  *Evox's Registrations Are Infringements.***

26 Another hurdle for EVOX is that any claimed creation of even an original work
27 which uses a preexisting work belonging in copyright to another is an infringement.
28 An infringing creation, even if registered with the Copyright Office, ***confers no***

*ownership rights* to the claimant who snaps a picture of someone else's copyright protected work. See discussion below of *Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000) and *Anderson v. Stallone*, Case No. 87-0592, 1989 U.S. Dist. LEXIS 11109, (C.D. Cal. April 25, 1989)(summary judgment granted defendant) as well as *Sobhani v. @radical.media, Inc*., 257 F. Supp. 2d 1234, 1240 (C.D. Cal. 2003)(summary judgment granted defendant). *See also*, *Alfred Bell & Co. v. Catalda Fine Arts,* 74 F.Supp. 973, 977 (S.D.N.Y. 1947) (registered photographs of Plaintiff's engravings were infringing, and conferred no rights on photographer).

EVOX's actions here are no different than the photographer who registered a copyright in *Alfred Bell & Co. v. Catalda Fine Arts,* 74 F.Supp. 973, 977 (S.D.N.Y. 1947). The photographer Defendant took pictures of a sculptural work of original and creative engravings made by the Plaintiff of old masters' artwork. The Defendant photographer registered his photographs of the engravings. The District Court acknowledged the photographing process by Defendant was elaborate and scientific, but the District Court felt it was obvious that this was "the pirating of the work of the engraver...." The lesson since at least 1947 is that one cannot validly copyright a work that infringes upon another's copyright.

As next explained, EVOX acquires no exclusive copyright-right by registering a work that in fact is either a copy or a derivative work which infringes upon the underlying owner's rights to make a copy or a derivative work. (This is aggravated by the fact EVOX deliberately did not disclose to the Copyright Office that the photographs were "based" upon preexisting works, and instead submitted them as if no preexisting works were involved.)[9]

## B. *The Auto & Logo Designers' Exclusive Rights Under Section 106.*

Section 106 of Title 17 states in material part:

> Subject to sections *107 through 122* [17 USCS §§ 107 through 122], the owner of copyright under this title has the *exclusive* rights to do and to

---

[9] Such deliberate action in violation of section 409(9) is the basis for invalidating all 64 purported registrations that support the 149 PHOTOGRAPHS, as discussed in the CROSS-MSJ MOTION as well as below in Part V.

*authorize* any of the following:
****
(1) to reproduce the copyrighted work in *copies*....;
(2) to prepare *derivative works based* upon the copyrighted work;
(3) to *distribute copies* ...to the public by sale or other transfer of ownership, or by rental, lease, or lending;
****

Thus, section 106 creates for the owner of the automobile designs and trademark logos appearing in EVOX's pictures three pertinent exclusive rights – the right to reproduce copies, the right to prepare derivative works, and the right to distribute copies.

Because EVOX had no proper authorization from the copyright owner, Nimmer explains EVOX's registrations are *at least* an infringement. As Nimmer explains:

If the pre-existing work that serves *as the bases for* a derivative or collective is itself protected by copyright, then its unauthorized incorporation into a derivative or collective work *constitutes copyright infringement. Nimmer on Copyright* §3.06 at pg. 3-34.32 (2015) (Emphasis added).

Likewise, the Ninth Circuit in *United States v. Taxe*, 540 F.2d 961, 965, fn. 2 (9th Cir. 1976) quoted *Nimmer* to the same effect on a derivative use of a preexisting work — that it necessarily means it is *infringing* if there was no consent:

[A] work will be *considered a derivative work only if it would be considered an infringing work* if the material which it has derived from a prior work had been taken without the consent of a copyright proprietor of such prior work. It is *saved from being an infringing* work *only* because the borrowed or copied material was taken with the *consent of the copyright owner* of the prior work, or because the prior work has entered the public domain." 1 M. Nimmer, *The Law of Copyright* § 39, at 167. (Emphasis added.)

Thus, a derivative use is necessarily always an infringement unless there is proper consent. An infringement confers no copyright rights; it only violates them.

Here EVOX had no consent from the copyright owners, as EVOX denies any licenses whatsoever were obtained. D.SUF.OPP. ##16-21.

## C. *Evox Does Not Own The Rights Under Section 106 It Usurps.*

In *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.* (1991) 499 U.S. 340, 361, the Court stated the two elements of ownership and originality in copyright infringement suits:

Not all copying, however, is copyright infringement. To establish

---

infringement, two elements must be proven: (1) ***ownership*** of a valid copyright, and (2) copying of constituent elements of the work that are ***original***. (Emphasis added.)

However, when one has registered a copyright in a work that infringes on an exclusive right (*e.g.*, a derivative use right) belonging to a copyright owner, the registrant had "no right to obtain" such a copyright registration. *Pickett v. Prince*, 207 F.3d 402, 406 (7th Cir. 2000). *See also, Anderson v. Stallone*, Case No. 87-0592, 1989 U.S. Dist. LEXIS 11109  (C.D. Cal. Apr. 25, 1989) at *30-31 (summary judgment granted defendant)(hereafter *Stallone* and *Sobhani v. @radical.media, Inc.*, 257 F. Supp. 2d 1234, 1240 (C.D. Cal. 2003). Thus, such a registration is not the "ownership of a valid copyright" – the first element necessary to prove infringement in *Feist*.

In *Pickett,* the Plaintiff registered a copyright in a guitar in the shape of Prince's copyright-protected symbol of his name. Prince himself made a similar guitar. The Plaintiff sued Prince for copyright infringement. The Court in *Pickett* explained why Mr. Pickett had no rights in his copyright registration as follows:

> "[Pickett] is unafraid to acknowledge that he is an infringer and to content himself with arguing that his copyright extends only to the original elements of the infringing work....But the only copyright that Pickett claims Prince infringed is a copyright that Pickett had ***no right to obtain***, namely a copyright ***on a derivative work based on Prince's copyrighted symbol***. *Id.*, 207 F.3d at 406, 407 (emphasis added).

Both *Stallone* and *Pickett* were followed in *Sobhani v. @radical.media, Inc.*, 257 F. Supp. 2d 1234, 1240 (C.D. Cal. 2003)(summary judgment granted defendant). The Court in *Sobhani* denied "copyright protection" to a parody artist (an aspiring video commercial director) who without authorization made a parody of a Jack-in-the-Box commercial. The parody artist sued in copyright another parody artist (a producer who produced a parody commercial) for doing a substantially similar parody. The Central District granted summary judgment to Defendant. The Court explained that the Plaintiff's copyright-registered parody was based upon the preexisting copyright-protected commercial belonging to Jack-in-the-Box, and as a result, the parody enjoyed "no copyright protection" ... "because Plaintiff used the previous work without authorization..." *Id.*

Thus, in *Sobhani*, section 106 barred a copyright registrant from suing a third-party

1    (*i.e.*, just like Defendant CALRAC represents here) because the Plaintiff was suing

2    him upon an unauthorized derivative work of a preexisting copyrighted work owned

3    by Jack-in-the-Box. If one changes "Jack-in-the-Box" to Toyota, etc., *Sobhani*

4    signifies that EVOX has "no copyright protection" to sue Defendant CALRAC for

5    Plaintiff's use of the previous works of Toyota, etc., without proper authorization.

6         **D.   _The Court Should Give No Evidentiary Value to Evox's Registrations._**

7         The decisions in *Stallone*, *Pickett*, and *Sobhani* each represent the proper exercise

8    of discretion under section 17 U.S.C. §410(c) to disregard the three Plaintiffs'

9    copyright registrations. These courts denied copyright protection to sue upon a work

10   that infringed upon the derivative use rights of a copyright owner when when the

11   copyright owner was not involved, as here.

12        In such situations, 17 U.S.C. §410(c) states that even though a registration

13   provides a presumption of the validity of the copyright, the Court alone has the

14   "discretion" on what "evidentiary weight" to give the certificate of registration.[10]

15        Here, Your Honor is requested to give EVOX's registration no weight ***at all*** as a

16   matter of law. Each of EVOX's photographs infringe upon the copyright-protected

17   rights belonging to others, namely the owners of the auto designs and trademark logos

18   that appear in the 149 PHOTOGRAPHS.

19        When no weight is given the registrations, EVOX's suit fails. EVOX does not have

20   the necessary ownership of an "exclusive right" to sue on a derivative use right

21   belonging to the automobile manufacturers, EVOX cannot sue Defendant CALRAC

22   under section 501(b).

23        **E.   _Evox's "Originality' In Infringing Works Establishes No Ownership._**

24        It appears that EVOX has a wrong idea that if it made an infringing but

25   *original* variant to a copyrighted work that EVOX's work is somehow protected in

26

27   _____

28        [10]Section 410(c) provides: "In any judicial proceedings the certificate of a
     registration made before or within five years after first publication of the work shall
     constitute prima facie evidence of the ***validity of the copyright*** and of the facts stated
     in the certificate. The evidentiary weight to be accorded the certificate of a registration
     made thereafter shall be ***within the discretion of the court.***"

copyright. However: "The case law... supports the conclusion that generally ***no part of an infringing derivative work*** should be granted copyright protection." *Anderson v. Stallone* Case No. 87-0592, 1989 U.S. Dist. LEXIS 11109  (C.D. Cal. Apr. 25, 1989), *29-30 (emphasis added.) This is hereafter referred to as *Stallone.*

In *Stallone*, the Central District Court of California granted summary judgment in favor of the Defendant. The Court denied copyright standing to Plaintiff based upon section 106(2) because the copyrighted work of Plaintiff infringed upon Defendant's exclusive right to make a derivative work under that same section 106(2). Plaintiff could ***not*** protect original additions made without authorization of Mr. Stallone. The Plaintiff registered a copyright in his treatment but the Court found it was an infringing work even though it had been granted copyright registration.[11] Such an infringing work confers no ownership even in an original adaptive derivative use.

The Central District Court in *Stallone* explained that an infringer cannot sue a third-party or the original owner of the preexisting work based upon even a truly original adaptation when the adaptation is itself an infringing derivative use: "He has not and ***cannot provide*** this Court with a single case that has held that ***an infringer of a copyright is entitled to sue a third party for infringing the original portions of his work***." *Id.*[12]

---

[11] The Court in *Anderson v. Stallone,* Case No. 87-0592, 1989 U.S. Dist. LEXIS 11109  (C.D. Cal. Apr. 25, 1989) at *30-31concluded: " ***Since Anderson's Work Is An Unauthorized Derivative Work, No Part Of The Treatment Can Be Granted Copyright Protection.*** Stallone owns the copyrights for the first three Rocky movies. Under 17 U.S.C. section 106(2), he has the exclusive right to prepare derivative works based on these copyrighted works. This Court has determined that Anderson's treatment is an unauthorized derivative work. Thus, Anderson ***has infringed*** upon Stallone's copyright. See 17 U.S.C. section 501(a)." (Emphasis in original).

[12] The Court in *Stallone* also discussed section 103 which Plaintiff quoted out of context from section 106. The Plaintiff relied upon section 103'slanguage to claim an original addition that creates a derivative work can create an independent copyright to use the preexisting work without the owner's consent. The *Stallone* court pointed out that this would be in conflict with the exclusive rights in section 106. It cited that Nimmer concurs:  "As the House Report and Professor Nimmer's treatise explain, 103(a) was not intended to apply to derivative works and most certainly was not an attempt to modify section 106(2)." (*Anderson v. Stallone*, *supra*, Case No. 87-0592, 1989 U.S. Dist. LEXIS 11109, at *30-31.)

The same holding as in *Anderson* was followed in *Pickett v. Prince*, 207 F.3d 402, 406 (7ᵗʰ Cir. 2000). As mentioned earlier, Mr. Pickett took the trademark logo of the singer-songwriter Prince, and made it into a guitar. Mr. Pickett copyrighted its use as a guitar. Prince used his own logo symbol to likewise make a guitar. Mr. Pickett sued Prince for infringement. The Seventh Circuit said that Prince had the copyright rights in the trademark logo as a preexisting work before Mr. Pickett made his guitar. As a result, Prince alone had the exclusive right of a derivative use under section 106(2) to make a guitar from his symbol. The Court in dismissing Plaintiff's copyright infringement claim held: "So Pickett could not make a derivative work based on the Prince symbol without Prince's authorization ***even if Pickett's guitar had a smidgeon of originality***." *Id.* (Emphasis added.) The Court rejected any notion that one who is an "infringer" has a right to claim an original addition to a copyrighted work gives the infringer a copyright in the derivative work. Instead, this violates the "exclusive" right of the copyright owner under §106(2), it said, and affirmed dismissal of the suit.[13]

### 1. Infringing Photographs on Sculpture Art in Alfred Bell.

Thus, even an original copyrighted photograph of a prior original sculptural art engraving – similar to what EVOX contends it can do here – made without proper license from the owner of the sculptural art is itself infringing. *See, Alfred Bell & Co. v. Catalda Fine Arts,* 74 F.Supp. 973, 977 (S.D.N.Y. 1947). In *Alfred Bell*, the District Court found the photograph infringing even though the photographer's effort involved "a tedious process requiring skill and patience and is, therefore, rather expensive compared with modern color photographic processes." *Id.*, at 974-75  On appeal, the Second Circuit in *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 104-105 (2d Cir. 1951) agreed, rejecting the photographer's argument he could acquire a right to copy a three-dimensional engraving (a sculptural work) by means of a sophisticated

---

[13] *Pickett v. Prince*, 207 F.3d 402, 406 (7th Cir. 2000) also addressed section 103 stating Mr. Pickett "is unafraid to ***acknowledge that he is an infringer*** and to content himself with arguing that his copyright extends only to the original elements of the infringing work. But we do not read section 103(a) as qualifying the exclusive right of the owner of the copyright of the original work to make derivative works based on that work, the right conferred by section 106(2)."

1  photographic process.  The conclusion was that the photographer had no right to

2  enforce his copyrighted photographs against the owner of the copyrighted sculptural

3  works which he photographed. The District Court said to allow this would sanction

4  the "pirating of the work of the engraver":

5          [W]e see no possible doubt that defendants, who did deliberately copy the mezzotints, are *infringers*. For a copyright confers the exclusive

6          right to copy the copyrighted work- *a right not to have others copy it.*

7  EVOX is in no better position.

### 2.  A Photographer Infringes Upon Another's Derivative Use Right.

9      Another pertinent case to the facts here is *Gaylord v. United States*, 777 F.3d 1363,

10  1366 (Fed. Cir. 2015)(photograph of sculpture without consent violates section

11  106(2)). A  photographer without proper authorization from the copyright owner took

12  a photograph of an original sculptural work. The sculptural work represented

13  numerous life-size Korean War soldiers walking through a field. It was called The

14  Column. The photographer waited for hours, and captured an eery early-morning

15  photograph of the Column looking like the soldiers were trudging through the snow.

16  The originality of the photographer's work was unquestionable.

17      However, the photographer erroneously thought he had obtained a license from the

18  copyright owner of the sculptural work, but he did not. The photographer licensed the

19  use of the photograph to the Post Office. The Post Office put it on a popular stamp

20  that sold millions of copies. It turned out that the photographer had made an unwitting

21  unauthorized derivative use of the true copyright owner's rights by means of his

22  photograph of the sculpture art. The Post Office was found as an infringer, and had to

23  pay damages on the sales of millions of stamps.[14]

24      This is a useful precedent on two levels. It proves:

25

26          [14] *Gaylord v. United States*, 777 F.3d 1363, 1366 (Fed. Cir. 2015) recognized

27  the photograph at issue was an unauthorized derivative work: "It selected Mr. Alli's photograph of The Column [*i.e.*, a sculptural work] for the stamp face, and it paid Mr.

28  Alli a one-time fee of $1,500 for the right to use his photo. The Postal Service did *not seek Mr. Gaylord's consent to use The Column—the photograph was a 'derivative work'* of The Column under 17 U.S.C. § 106(2)—before issuing the stamp in 2003, and Mr. Gaylord never gave his consent."

1. A photograph of a sculptural work created by another is a derivative use that belongs exclusively to the owner of the sculptural work under section 106(2);

2. Without authorization from the copyright owner of the sculptural work to make the photograph, the photographer is an infringer, and so is anyone else who exploits such derivative-use photograph.

In EVOX's case, EVOX is an infringer even if it was like the photographer in *Gaylord*, and made the most original and creative photograph imaginable. In *Gaylord*, the photographer at least *thought* he obtained the right license for a derivative use. He and the Post Office were wrong, and it resulted in a large liability for the Post Office on millions of stamps. But EVOX admits it has no licenses and yet persists in this claim. Consequently, as EVOX is an infringer due to its unauthorized derivative-use photographs, it acquires no lawful ownership rights in the photograph, even the original elements. Without an exclusive right upon which EVOX can sue, EVOX lacks standing under 17 U.S.C. §501(b).

## V. EVOX'S REGISTRATIONS ARE ENTIRELY INVALID.

In violation of the disclosure duty in section 409(9), EVOX deliberately chose *not* to reveal to the Copyright Office material information about their photographs being based upon preexisting works. EVOX then refused to provide any good faith basis for not disclosing to the Copyright Office these preexisting works  when asked in a 30(b)(6) deposition. This fits all the elements necessary to apply section 409(9) as a ground to invalidate all of the registrations to which the 149 PHOTOGRAPHS pertain. *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 456 (2d Cir. 1989)(summary judgment granted because applications deliberately failed to disclose preexisting works in violation of section 409(9).)

Plaintiff EVOX said it did not disclose the preexisting works — automobile designs, logos, etc. – for each of the 149 PHOTOGRAPHS in reliance upon advice of counsel. Then when asked whether EVOX was willing to waive the privilege or provide any justification, the EVOX's 30(b)(6) witness, Mr. Thompson, refused in deposition to give any justification for the failure to disclose to the Copyright Office.

EVOX did so in reliance upon advice of current counsel to not respond if it were necessary waive the attorney client privilege. Because EVOX's Mr. Thompson said he could not offer any justification without waiving the privilege, he would not respond. Thus, EVOX's deliberate decision not to disclose material facts to the Copyright Office was based upon reliance upon advice of counsel. Yet EVOX refused to waive the privilege to offer any explanation. D.SUF.OPP. ## 67-76.

Plaintiff EVOX's registrations were thus deliberately procured by materially misleading applications to the Copyright Office, without any good faith justification.

The reliance upon advice of counsel is no defense unless the communication is disclosed to the adverse party in discovery. If such a party refuses to waive, the Court has the right to prevent a later effort to waive.  This leaves the trier-of-fact with only one possible inference – *bad faith*. Under the case of *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. Cal. 2001), the Ninth Circuit in a copyright infringement suit upheld the bar on a good faith defense because defendant in discovery refused to waive the attorney-client privilege. The District Court refused to allow the defendant later to waive the defense due to his prior refusal in discovery to waive the privilege. The District Court's ruling meant the fact finder would have to conclude defendant was guilty of bad faith  The Ninth Circuit affirmed:

> Here, Feltner sought to argue that he continued his infringing activities based on the advice of his attorney, while at *the same time refusing to answer questions regarding relevant communications* with counsel until the "eleventh hour." Under these circumstances, the district court was *within its discretion in precluding Feltner from invoking the advice of counsel defense*. (Emphasis added.)

The same principle applies here. EVOX admitted it deliberately did not disclose to the Copyright Office any preexisting works. Had EVOX disclosed to the Copyright Office that any of the 149 PHOTOGRAPHS were based upon preexisting works of the automobiles, logos, and the public-domain backgrounds, the Copyright Office would necessarily have scrutinized the photographs. The Copyright Office would then examine to see what *contribution* was added that would render the photograph

*original*. Under the slavish copy doctrine (see Part VII at page 23-25 *infra*), EVOX would ordinarily be rejected for registration for an "accurate-as-possible" product photograph. Hence, EVOX's deliberate non-disclosure was material. EVOX's refusal to offer any good faith explanation in discovery means EVOX must now abide by the legal consequences. Only one inference is left: EVOX's decision of non-disclosure was in bad-faith.

A copyright application requires in question six that the applicant disclose pre-existing works that are reflected in the applicant's derivative work, *e.g.*, a sculpture or graphic work or public domain items. *See, Nimmer on Copyright* §3.06 at 3-34.32 (2015)(Copyright Office requires disclosure in application of even public domain works that are adapted so it can measure the degree of original contribution by applicant.) This derives from 17 U.S.C. §409 (9) which states:

> The application for copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include –
> (9) in the case of a compilation or derivative work, an identification of any **preexisting work or works that it is based on or incorporates**, and a brief, general statement of the additional material covered by the copyright claim being registered;.... (Emphasis added.)

In the Second and Ninth Circuits, only an "accidental" failure to disclose does not require invalidation of the registrations. *See, Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1145 (9th Cir. 2003). The Second Circuit earlier stated the same principle in affirming summary judgment. Iit held that the registrations were invalid due to plaintff's violating the duty to disclose preexisting works under section 409 (9) on its copyright applications. The Second Circuit in *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 456 (2d Cir. 1989) explained:

> It is the law of this Circuit that the "**knowing failure** to advise the Copyright Office of facts which **might have occasioned** a rejection of the application constitutes reason for holding the registration invalid and thus incapable of supporting an infringement action." *Eckes, supra,* 736 F.2d at 861-62 (quoting *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 988 (S.D.N.Y. 1980)). Faced as we are with that exact situation in the instant case, we hold that Whimsicality, because of **its misrepresentations**, does not have valid copyrights capable of enforcement. (Emphasis added.)

---

1    Here, EVOX admitted its deliberate non-disclosure. This means it was a "knowing

2  failure" to advise the Copyright Office of "facts which *might have* occasioned

3  rejection of the application." It was not an accident.  Here, because the Copyright

4  Office's job is to pass upon the "originality of the works submitted" (*Gener-Villar v.*

5  *Adcom Group, Inc*., 560 F.Supp.2d 112, 126 (D.P.R. 2008)), EVOX's refusal to

6  disclose the preexisting works clearly amounts to a material misrepresentation to the

7  Copyright Office.

8    Thus, summary judgment in the Cross-Motion against EVOX is proper. The denial

9  of EVOX's Motion for Summary Adjudication here is likewise proper. Each copyright

10  registration was obtained on a fraudulent application.

11  **VI. EVOX'S DMCA CLAIM FAILS**.

12    Section 1202(b)(1) relates to violations involving removal of copyright

13  information. It does not apply when the copyright registrations are invalid. *Thron v*

14  *Harpercollins Publrs., In c*., 01 Civ. 5437, 2002 U.S. Dist. LEXIS 13670, *4-5

15  (S.D.N.Y. 2002). Here, the registrations are invalid because either (a) the §409(9) bar

16  applies; or (b) because EVOX lacks the necessary exclusive license in writing to

17  render valid EVOX's registrations of a work to makes use of a derivative use right of

18  another; or (c) because EVOX registered works which themselves were infringing

19  under section 106, and hence invalid.

20    Furthermore, the elements of a violation of §1202(b)(1) on removal of copyright

21  information cannot be made out here. Plaintiff EVOX's motion at 9:19-25 correctly

22  quotes *Imageline, Inc. v. CafePress.com. Inc*., No. CV 10-9794, 2011 U.S. Dist.

23  LEXIS 39828, at *17 (C.D. Cal. Apr. 6, 2011) the elements as follows:

24

25        To state a claim for removal of CMI [*i.e.*, copyright management
          information] under 17 U.S.C. § 1202(b)(1), a plaintiff must allege that

26        a defendant: (1) without authority of the copyright owner or the law;
          (2) *intentionally* removed or altered CMI; (3) *knowing or having*

27        *reasonable grounds to know* that the removal will *induce, enable,*
          *facilitate, or conceal an infringement* of the federal copyright laws.

28        17 U.S.C. § 1202(b)(1).

1    Here, the Declaration of Steve Vahidi entitles him to summary judgment because it
2    proves that none of these elements is present, let +alone any one of them.
3    The first element does not apply. Mr. Vahidi was correct that he had the authority
4    of the law to remove copyright information in order to use a photograph in product
5    advertising under section 113(c). See Part II, *supra*. *See, Leveyfilm, Inc. v. Fox Sports*
6    *Interactive Media, LLC*, CV 10-9794, 2014 U.S. Dist. LEXIS 92809, at *48-49
7    (N.D.Ill. 2014)("Since Fox's purpose in using the photo is protected by the fair use
8    defense, it is illogical to also conclude that Fox intended to contribute to or conceal an
9    infringement.")
10   The second and third elements also do not apply but for multiple reasons.
11   First, Mr. Vahidi's believed at the time that he had a legal right to use any
12   photograph for product advertising, and that copyright laws did not apply to such a
13   use. D.SUF.OPP. ## 101, 103. He cannot "reasonable know" he was in the wrong
14   when his belief is confirmed by the existence of section 113(c) to the same effect.
15   *Leveyfilm*, *supra*.
16   Moreover, Mr. Vahidi explained he had no idea that when he instructed the
17   removal of EVOX IMAGES that he was removing a copyright symbol. The version of
18   the 149 PHOTOGRAPHS downloaded and used on the CALRAC website were much
19   smaller than the registered versions shown by EVOX to Mr. Vahidi at his deposition.
20   Defendant CALRAC and Mr. Vahidi did not recognize any copyright symbol on the
21   resolution of the photographs that had been downloaded. D.SUF.OPP. #102. Thus,
22   when Defendants instructed the removal of EVOX IMAGES (with the symbol
23   connected to the E in EVOX), Defendants did not intentionally remove the copyright
24   symbol with the intent to conceal or contribute to copyright infringement.
25   D.SUF.OPP. #102.
26   Thus, contrary to EVOX's inferences sought for at page 7 of its Motion for
27   Summary Adjudication, the admissions EVOX sought from Defendants did not ask
28   whether the removal of the copyright symbol was *intentionally* removed, or *knowingly*

1   removed to conceal, etc., copyright infringement. The admissions only asked whether

2   the removals in fact happened. Hence, for similar reasons that summary judgment was

3   granted defendants in *Gordon v. Nextel Communs*, 345 F.3d 922, 926-27 (6th Cir.

4   2003) – the defendants did not knowingly distribute copyrighted works without

5   copyright information under §1202 (b)(3), Defendant CALRAC and Mr. Vahidi are

6   entitled to summary judgment under §1202(b)(1) as well.

7   **VII.    EVOX'S WORKS LACK ORIGINALITY**.

8   **A.  *The Wiki Evox Submitted  Supports Slavish Copying Took Place.***

9        Defendant's CROSS-MSJ MOTION at pp. 18-23 demonstrates EVOX's

10  photographs are slavish copies, and lack the requisite originality to support copyright

11  infringement. Defendant CALRAC relied upon numerous summary judgment rulings

12  in the product-photography field that support this slavish copy doctrine applies here.

13  When the output is obviously as "accurate as possible" to depict a product, it is not

14  subject to copyright protection. Defendant CALRAC refers the Court to the extensive

15  discussion of the following cases at pp. 18-23 of CROSS-MSJ MOTION: *Bridgeman

16  Art Library v. Corel Corp*., 36 F.Supp.2d 191, 197 (S.D.N.Y. 1999); *ATC Distribution

17  Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc*., 402 F.3d 700, 712 (6th

18  Cir. 2005) and  *J. Thomas Distribs., Inc. v. Greenline Distribs., Inc*., No. 95-2100,

19  1996 U.S. App. LEXIS 29035, at *5-6 (6th Cir. 1996); *Kolody v. Simon Mktg*., 97 CV

20  0190, 1998 U.S. Dist. LEXIS 14229, at *23-24 (N.D.Ill. 1998).

21       There is one additional piece of evidence. EVOX provided this evidence in its own

22  moving papers. This is a sealed document that EVOX titles WIKI. See EVOX's SUF

23  ##4,5, 7.  The WIKI falls right within *Feist*'s description of works of "merely trivial"

24  originality because its production is "so ***mechanical*** or ***routine*** as to require no

25  creativity whatsoever." (*Feist, supra*, 499 U.S. at 345)(emphasis added).

26       The WIKI is laid out like a *Wikipedia* article with precise instructions on exactly

27  every setting of angle, lighting, poses, etc. Clearly, slavish copying is going on. The

28  instructions are aimed at the most precise and clear and as accurate as possible *copy* of

---

1  the image of a car.  It is a good 'xerox' job that makes every photograph – no matter

2  which employee does the work for hire – look identical to all other EVOX

3  photographs. EVOX's WIKI is no different than a WIKI online manual on the best

4  settings on how to use a copier at the office to set contrast, lighting, darkness, dpi, etc.

5      Are we going to give copyright protection to photocopies of books with better

6  mechanical and routine copy-settings of pages without a derivative use license

7  regardless of the fact this would rip off the contents of the book within the xerox? Of

8  course not. This is exactly what the Supreme Court meant in *Feist* by "mechanical and

9  routine" copying with "trivial" variations. EVOX cannot be allowed to copyright

10  slavish copies, no matter how much "sweat of the brow" it insists applies. The

11  Supreme Court in *Feist* expressly rejected the "sweat of the brow" theory of copyright

12  which would protect subject matter that was expensive and time-consuming to

13  prepare. 499 U.S. at 352-56. Instead, it said: "Copyright  rewards originality, ***not***

14  ***effort***." *Id.* at 364. (Emphasis added.)

15          **B.  <u>Plaintiff's Expert is Mistaken On What He is Supposed to Look At.</u>**

16      Plaintiff EVOX supposedly provides proof of originality through Plaintiff's expert,

17  Mr. Sedlik. In ¶ 17 of Mr. Sedlik's declaration, he opines on the appearance of speed,

18  sleekness, etc., that EVOX photographs in general supposedly evince due to 'creative'

19  decisions.[15]  But he is mistaken as a matter of law on what to look at. He is looking at

20  what the car in the photograph exhibits, not what the photograph without the

21  automobile would exhibit. This error pervades his entire Declaration.

22  D.SUF.OPP.#105.

23      A commercial product in a photograph is to be subtracted out to analyze whether

24  what remains in the photograph is original. *Meshwerks, Inc. v. Toyota Motor Sales*

25  *U.S.A.*, 528 F.3d 1258, 1265-1266 (10th Cir. 2008)("an accurate portrayal of the

26

27

28      [15] This expert never says he is precisely speaking about the 149
       PHOTOGRAPHS. He is talking in general. Hence, his opinions are not relevant.

1  unadorned bottle could not be copyrighted," and must be "filtered out,"[16] citing
2  *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 765, 766 (9th Cir. 2003) (analysis of
3  originality is after "subtracting the unoriginal elements" namely the "photographing of
4  the Skyy bottle"). The same rule applies outside product photography to measure
5  originality. In *Sobhani v. @radical.media, Inc.*, 257 F. Supp. 2d 1234, 1240 (C.D. Cal.
6  2003), the Court granted summary judgment to defendant who was sued upon a
7  parody of a Jack-in-the-Box Commercial. The Court filtered out what was not original
8  with the Plaintiff, and found what remained had insufficient originality, and granted
9  summary judgment for defendant: "If the ***proprietary Jack-in-the-Box elements are***
10  ***ignored***, all that remains is a largely unoriginal and elementary spoof of the
11  (copyrighted) Cast Away movie." *Id.,* 257 F.Supp. at 1241 (emphasis added).
12      Rather, it is Defendant CALRAC's expert, Mr. Takata, who made the right
13  analysis. He subtracting out the the unoriginal elements that EVOX did not create in
14  the photograph. From what remained, he concluded it involved unoriginal stock poses,
15  backgrounds, and lighting. D.SUF.OPP. ## 77-93.
16  **VII.   CONCLUSION**.
17      Defendants CALIFORNIA RENT-A-CAR and STEVE VAHIDI respectfully
18  request this Court eny EVOX's request for summary adjudication, and grant
19  Defendants' motion for summary judgment, or partial summary adjudication.

DEL TONDO & THOMAS

22  Dated: June 6, 2016

Douglas J. Del Tondo, Esq.
Attorneys for Defendants,
CALIFORNIA RENT-A-CAR, INC. and
STEVE VAHIDI

---

27  [16]"The teaching of *Skyy I* and *II* [in Ninth Circuit], then, is that the vodka bottle,
28  because it ***did not owe its origins to the photographers***, had to be filtered out to
determine what copyrightable expression remained." *Meshwerks, Inc. v. Toyota Motor
Sales U.S.A.*, 528 F.3d 1258, 1266 (10th Cir. 2008)(emphasis added).

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

    I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2201 Dupont Drive, Suite 820, Irvine, California 92612.  I am an attorney admitted to practice before the bar of this court at whose direction the service was made.

    On the Date of Service indicated below, I served the foregoing document(s) described on the person(s) listed below in the action of Evox Productions LLC v. California Rent-A-Car by sending a PDF version to:

Jonathan Gottfried, Esq.              Counsel for Plaintiff
BROWNE GEORGE ROSS LLP
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Fax: (310) 275-5697
jgottfried@bgrfirm.com

  **BY CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

Date of Service: June 6, 2016

Executed on June 6, 2016, at Irvine, California.

    I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_____
Douglas J. Del Tondo