Douglas J. Del Tondo, Esq.  (SBN 100563)
  doug@deltondothomas.com
DEL TONDO & THOMAS
Attorneys at Law
2201 Dupont Drive, Suite 820
Irvine, California 92612
Tel. (949) 851-0558 ✦ Fax: (949) 266-9621

Attorneys for Defendants, CALIFORNIA RENT-A-CAR, INC.,
and STEVE VAHIDI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA,

## WESTERN DIVISION

| | |
|---|---|
| EVOX PRODUCTIONS, LLC, a California limited liability company, | CASE NO. 2:15-cv-08046 MWF (RAOx) |
| Plaintiff, | **DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND / OR ADJUDICATION** |
| v. | |
| CALIFORNIA RENT-A-CAR, INC., a California corporation, and STEVE VAHIDI, an individual, | |
| Defendants. | Judge:     Hon. Michael W. Fitzgerald |
| | Date:      June 27, 2016 |
| | Time:      10:00 a.m. |
| | Courtroom: 1600 |
| | Trial Date:   January 10, 2017 |

     Defendants, CALIFORNIA RENT-A-CAR, INC., and STEVE VAHIDI,

respectfully submit the following Reply to the Opposition of Plaintiff EVOX

PRODUCTIONS, LLC ("EVOX")'s to Defendant's Motion for Summary Judgment,

or Partial Summary Adjudication, Dkct. Control Number 44.

THEREOF; DECLARATIONS OF JONATHAN GOTTFRIED, BARRY

THOMPSON & JEFFREY SEDLIK, Doc. Control No. 34.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

PAGE

OVERVIEW OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. DEFENDANT COMES WITHIN SECTION 113(c). . . . . . . . . . . . . . . . . . 1

   A. *Evox' Stretches Section 113(c) to Awkwardly Distinguish Two Decisions.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   B. *The True Basis of the Holding in Bryant.*. . . . . . . . . . . . . . . . . . . . . 2

   C. *The Legislative History and Background Agrees.*. . . . . . . . . . . . . . 4

   D. *Evox' Improper Rules of Construction in 'Fair Use' Do Not Apply.*. . . . 5

   E. *Section 113(c) Does Not Overrule Skyy I.*. . . . . . . . . . . . . . . . . . . . 5

   F. *'Fair Return for Labor' Argument Rejected by Supreme Court.*. . . . . . 5

   G. *'Can Section 113(c) Apply to Artist's Product Paintings?.*. . . . . . . . . 6

II. EVOX TURNS AROUND AND EMBRACES SECTION 113(c). . . . . . . . . 7

III. EVOX MADE DERIVATIVE USES OF OTHERS' WORKS. . . . . . . . . . . . 8

   A. *Evox Has Unwittingly Admitted A Derivative Work.*  . . . . . . . . . 8

      1. WHY DOES DERIVATIVE USE MATTER?. . . . . . . . . . . . . . . . . . . 9

   B. *Evox Is Wrong that Skyy I Is A Hard and Fast Rule About Useful Articles.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   C. *Evox Misleads that A Useful Article Never Has Copyright Protection.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   D. *Ornamental Designs (Steering Wheels, Grilles) Are Protected.* . . . . . 14

   E. *Protection for Decorative Flourishes & Swirls Within A Shape of A Car.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   F. *Evox's Errs that A Pre-Production Model Is Tested Like A Useful Article Just Because Identically Used Later in A Useful Article.*. . . . . . . . . . . . 15

      1. THE MAZER RULE ON PRE-PRODUCTION MODELS. . . . . . . . . . . . 15

      2. EVOX'S DISTORTED READING OF OMEGA. . . . . . . . . . . . . . . . . . 18

IV. COPYRIGHT PROTECTION OF TRADEMARKS. . . . . . . . . . . . . . . . . 18

V. EVOX'S 'CONSENT' ARGUMENT FOR DERIVATIVE USE. . . . . . . . . . 20

VI. EVOX'S PHOTOS LACK 'ORIGINALITY.'. . . . . . . . . . . . . . . . . . . . . . . 21

PAGE

VII.  EVOX'S FAILURE TO DISCLOSE TO THE COPYRIGHT OFFICE. . . . 22

VIII. EVOX'S DCMA CLAIMS FAIL.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IX.   EVOX'S HAS NO RIGHT TO DIRECT OR INDIRECT PROFITS.. . . . . 24

X.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

# TABLE OF AUTHORITIES

CASES                                                                                           PAGE

2

3  *Chestang v. Yahoo Inc*., No. 2:11-CV-00989-MCE,

4       2012 WL 3915957, at *5 (E.D. Cal. Sept. 7, 2012) . . . . . . . . . . . . . . . . . . . . . . .  19

5  *Bryant v. Gordon,* 483 F.Supp.2d 605, 611 (N.D.Ill. 2007). . . . . . . . . . . . . . . . . . .  1-4

6  *CDN Inc. v. Kapes*, 197 F.3d 1256 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . .  5

7  *DC Comics v. Towle,* 989 F.Supp.2d 948 (C.D.Cal. 2013)  . . . . . . . . . . . . . . . . .  14

8  *Effects Assocs. v. Cohen*, 908 F.2d 555 (9th Cir. 1990).. . . . . . . . . . . . . . . . . . .  10

9  *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000) . . . . 5,8,10-11,18-19, 21

10  *Ets-Hokin v. Skyy Spirits, Inc*., 323 F.3d 763 (9th Cir. 2003) .. . . . . . . . . . . . . . . . .  22

11  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991) . . . . . . . . . . . . . . . . 5

12  *Fabrica, Inc. v. El Dorado Corp.*, 697 F.2d 890, 893 (9th Cir. 1983) . . . . . . . . . .  14, 15

13  *Gaylord v. United States,* 777 F.3d 1363  (Fed.Cir. 2015). . . . . . . . . . . . . . . . . . . .  12

14  *Gener-Villar v. Adcom Group, Inc*., 560 F.Supp.2d 112 (D.P.R. 2008) . . . . . .  22-23

15  *Harper & Row, Publrs. v. Nation Enters*., 471 U.S. 539 (1985). . . . . . . . . . . . . . .  12

16  *Hyperquest, Inc. v. N'Site Sols., Inc*., 632 F.3d 377 (7th Cir. 2011).. . . . . . . . . .  9, 21

17  *L. Batlin & Son, Inc. v. Snyder,*  536 F.2d 486 (2d Cir. 1976). . . . . . . . . . . . . . . . . .  12

18  *Leicester v. Warner Bros*., 232 F.3d 1212 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . .  4-5

19  *Lenz v. Universal Music Corp*., 815 F.3d 1145(9th Cir. 2016).. . . . . . . . . . . . . . . . .  21

20  *Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

21  *Major v. Sony Music Entertainment, Inc*. 1992 U.S. Dist. LEXIS 12316

22       (S.D.N.Y. Aug. 17, 1992, 92 Civ. 2826).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

23  *Mazer v. Stein* , 347 U.S. 201 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15-17

24  *Meshwerks, Inc. v. Toyota Motor Sales U.S.A.,*

25       528 F.3d 1258  (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21-23, 24

26  *Minden Pictures, Inc. v. John Wiley & Sons, Inc*.,

27       795 F.3d 997 (9th Cir. 2015) ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

28  *Omega S.A. v. Costco Wholesale Corp*., 776 F.3d 692 (9th Cir. 2015) .. . . . . . . .  17-18

1   *Rosenthal v. Stein*, 205 F.2d 633, 635 (9th Cir. 1953) ... . . . . . . . . . . . . . . . . . . . . . . 15

2   *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513 (7th Cir. 2009) .. . . . . . . . . . . . 21

3   *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992) ... . . . . . . . **5**, 19

4   *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th  Cir. 1989).. . . . . . . . . . . . . . . . . . . . 13

5   *Smith & Hawken, Ltd. v. Gardendance, Inc.*, No. C 04-1664 SBA,

6       2005 WL 1806369, at *2 (N.D. Cal. July 28, 2005).. . . . . . . . . . . . . . . . . . . . . . 14

7   *Whimsicality, Inc. v. Rubie's Costume Co..* 891 F.2d 452 (2d Cir. 1989) ..     13,23-24

8

9   <u>CONSTITUTIONAL PROVISIONS</u>

10   U.S.Constitution, Art. 1, §8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11

12   <u>STATUTES</u>

13   17 U.S.C. § 101 ("Useful Article"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16, 17

14   17 U.S.C. § 101 ("Pictorial, graphical, and sculptural works"). . . . . . . 9, 11-12, 14, 16

15   17 U.S.C. § 101 ("Derivative work"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

16   17 U.S.C. § 102(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17   17 U.S.C. § 106(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18   17 U.S.C. § 106(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 20-21, 23

19   17 U.S.C. § 107. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5, 21

20   17 U.S.C. § 113(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21   17 U.S.C. § 113(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-8, 20-21

22   17 U.S.C. § 120. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

23   17 U.S.C. § 204(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

24   17 U.S.C. § 409 (9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 23-24

25   17 U.S.C. § 410(c)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

26   17 U.S.C. § 501(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 21

27

28

REGULATIONS & MANUALS FROM THE COPYRIGHT OFFICE

37 C.F.R. § 202.10 (a) (2016)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-18, 20

37 C.F.R. § 202.10 (b) (2016)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Compendium of U.S. Copyright Offices Practice* (2014) §313.4(A)... . . . . . . . . . . . 24

*Compendium of U.S. Copyright Offices Practice* (2014) §313.4(A)... . . . . . . . . . . . 23

*Compendium of U.S. Copyright Offices Practice* (2014) §313.4(J).. . . . . . . . . . . . 19

*Compendium of U.S. Copyright Offices Practice* (2014) §606.. . . . . . . . . . . . . . . . 19

*Compendium of U.S. Copyright Offices Practice* (2014) §906.4.. . . . . . . . . . . . . . . 15

*Compendium of U.S. Copyright Offices Practice* (2014) §907.1.. . . . . . . . . . . . . . . 23

*Compendium of U.S. Copyright Offices Practice* (2014) §907.2.. . . . . . . . . . . . . 9-10

*Compendium of U.S. Copyright Offices Practice* (2014) §913.. . . . . . . . . . . . . . . . . 19

*Compendium of U.S. Copyright Offices Practice* (2014) §919.. . . . . . . . . . . . . . 16-17

*Compendium of U.S. Copyright Offices Practice* (2014) §919.1.. . . . . . . . . . . . . . 24

*Compendium of U.S. Copyright Offices Practice* (2014) §924.2(A)... . . . . . . . . . . . 14

*Compendium of U.S. Copyright Offices Practice* (2014) §924.2(B)... . . . . . . . . . . . 24

LEGISLATIVE AUTHORITIES

House Report No. 94-1476 under 17 U.S.C. §113 . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**OVERVIEW OF ARGUMENT**

First, EVOX will argue that Defendant CALRAC cannot invoke 17 U.S.C. § 113(c) – the exemption to use copyrighted photographs to advertise useful articles one offers for sale or rent. (Hereafter all statutory references are to Title 17.) EVOX makes an elaborate argument which includes that it would be unconstitutional, deprive EVOX of its labor, etc. Then later, when EVOX realizes it has no licenses for a derivative use, and should lose on an unlawful derivative use, EVOX embraces section 113(c). It claims that this section gives EVOX a legality to make derivative works that exclusively belong to the car makers. It does not, as discussed below.

Second, EVOX claim to 'originality' for its photographs has also dissolved away. Our motion proved EVOX's photographs fit the long-line of product photography cases finding them slavish copies, and not protectible. EVOX cites in response *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000). However, there was no issue of slavish copying raised there. EVOX otherwise retreats into assertions that its experts say a 'creative process' is going on. But in *Meshwerks, Inc. v. Toyota Motor Sales U.S.A.* (10th Cir. 2008) 528 F.3d 1258, it found slavish copying, and held: "***creative decision-making*** in the process is ***insufficient*** to render the ***product original***." *Id.*, 528 F.3d at 1268 n.10.

Third, EVOX still offers no explanation at all for its non-disclosure of preexisting works. It will not waive its attorney client privilege. As the Copyright Office also applies the slavish copy rule, it is clear why EVOX did not disclose the cars & logos.

Finally, EVOX does not respond on the direct or indirect infringer profits, claiming that it is related to future discovery on the amount of profits. Instead, Defendants' motion is based upon the lack of a causal connection, not on the amount of profits.

# I. DEFENDANT COMES WITHIN SECTION 113(C).

## A. *Evox' Stretches Section 113(c) to Awkwardly Distinguish Two Decisions*.

EVOX absurdly claims section 113(c) exempts from copyright protection only a photograph that is imprinted on a useful article. EVOX is making this absurd argument so as to distinguish *Bryant*[1] and *Major*.[2]  In each case, the useful articles depicted in the advertisement happened to *also* involve a photograph **imprinted on** the useful article(s). But this had nothing to do with the outcome.

In *Bryant,* the *first* photograph in the advertisement –  the material one for applying section 113(c) — itself was of a notecard, calendars, etc. It was a photograph of the useful article for sale.  However, a *second* photograph just so happened to be within the notecard, calendars, etc. This latter fact had nothing to do with the outcome.

In *Major*, the advertisement had a picture of a video box cover along with text. It just so happened that the photographic representation of the video box cover in the advertisement also contained a photograph within the box cover itself.

In both cases, the exemption was the *advertising* of a useful article – notecards, calendars, and a video –  by means of an advertising picture or photograph. EVOX has pointed at a distinction without a difference.

When the statute is correctly applied, EVOX has admitted the facts necessary for Defendant CALRAC to prevail. EVOX admits that its photographs are "photographs of useful articles." (EVOX OPPOSITION at 5:15) (hereafter "OPP").

EVOX's concession is determinative of section 113(c). As explained below, section 113(c) clearly applies to restrict the copyright protection of *photographs* of useful articles. It has nothing to do with restricting protection of a useful article only if a photograph appears in or on the useful article itself.

---

[1]*Bryant v. Gordon*, 483 F. Supp. 2d 605, 613 (N.D. Ill. 2007).

[2]*Major v. Sony Music Entertainment, Inc*. 1992 U.S. Dist. LEXIS 12316, at *7 ((S.D.N.Y. Aug. 17, 1992, 92 Civ. 2826).

### B. *The True Basis of the Holding in Bryant*.

Given EVOX's distorted reading of *Bryant*, it is important to review its holding and facts. The issue in *Bryant* was the exemption from copyright protection if one used a copyrighted photograph of a useful article to sell or distribute that useful article. The Court in *Bryan*t clearly held that section 113(c) provides an exemption for the use of a copyrighted photograph in an advertisement of a useful article.

In *Bryant v. Gordon*, 483 F. Supp. 2d 605, 613 (N.D. Ill. 2007), the Court addressed section 113(c) in a case where the Defendants used photographs by a professional photographer found on the webserver purchased from the photographer by the defendants. The defendants used the product photographs which the Court said were owned in copyright by the professional photographer. The Court determined under section 113(c) that Plaintiffs' copyrighted photographs of useful articles used for purpose of selling the articles were not infringed upon. The Court said:

> [The Defendants'] website depicted, among other things, *t-shirts, desk clocks, computer mousepads, calendars, and notecards*. These items likely *qualify as 'useful articles.'* To the extent Gordon and Mach 1, LLC acquired such merchandise via the asset sale approved by the bankruptcy court, they were, in all likelihood, *entitled to depict it in order to advertise it for sale*, including over the Internet. *Id.*, 483 F.Supp. 2d at 613.

The District Court explained first the scope of section 113:

> [Defendants] nonetheless may have been entitled, under another provision of the copyright laws, to display at least some of the items they acquired to advertise them for sale. The *rights of a copyright owner like Bryant* "*do[] not include* any right to prevent the making, distribution, or display of pictures or photographs *of [useful] articles* in connection with advertisements . . . related to the distribution or display of such articles . . . ." 17 U.S.C.§ 113(c). A "useful article" is one that has an intrinsic utilitarian function. *Id.* § 101. *Id.*, 484 F.Supp. 2d at 613 (emphasis added).

Then the District Court explained the rights of the defendants to use the copyright protected photographs of the useful articles under section 113(c) to sell such articles:

> Though it is unclear to the Court exactly what was displayed on the website, Bryant's second amended complaint alleges that the website depicted, among other things, t-shirts, desk clocks, computer mousepads, calendars, and notecards. These items likely *qualify as*

*"useful articles."* To the extent [Defendants] acquired such merchandise via the asset sale approved by the bankruptcy court, they were, in all likelihood, *entitled to depict it* in order to *advertise it for sale*, including over the Internet. (Emphasis added.)

Likewise here, Defendant CALRAC is alleged to have done the same thing as the defendants in *Bryant v. Gordon, supra.* As the Court can see, this decision's holdings have nothing to with the pictures <u>on</u> the calendars, notecards, etc. Each determination in *Bryant* involved the photo <u>*of the useful article*</u> found on the Plaintiff's webserver.

## C. <u>*The Legislative History and Background Agrees*</u>.

Section 113(c) clearly exempts from any infringement to anyone the use of a photograph of a useful article to sell or distribute it, including a copyright protected photograph, such as in *Bryant.* Section 113(c) reads in full:

> (c)  In the case of a work lawfully reproduced in useful articles that have been offered for sale or other distribution to the public, *copyright does not include* any right to prevent the making, distribution, or display of pictures or photographs of such articles in connection with advertisements or commentaries related to the distribution or display of such articles, or in connection with news reports.

A useful article is defined in section 101:

> A 'useful article; is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a 'useful article.'

The Court in *Bryant* aptly summarized both statutes when read together:

> The rights of a copyright owner like Bryant "do[] not include any right to prevent the making, distribution, or display of pictures or photographs of [useful] articles in connection with advertisements . . . related to the distribution or display of such articles . . . ." 17 U.S.C. § 113(c). A "useful article" is one that has an intrinsic utilitarian function. Id. § 101. (*Bryant v. Gordon*, 483 F. Supp. 2d 605, 613 (N.D. Ill. 2007).

Congress' comments in H.R. 94-1476 support the same.  It is not about exempting from copyright protection a photograph of only useful articles with photographs also on them, *e.g.*, a coffee mug. Instead, Congress introduces section 113(c) by saying section 113 must address the "image of a useful article." It does not speak of "an image *on* a useful article," as EVOX contends is its aim. Congress says:

1  The broad language of section 106(1) and of subsection (a) of section
2  113 *raises questions* as to the *extent of copyright protection for a
   pictorial*, graphic, or sculptural work that *portrays, depicts, or
3  represents an image of a useful article in such a way that the
   utilitarian nature of the article can be seen*. (Emphasis added.)

4  Then the House Report explained the intended scope of section 113(c):

5  "Section 113(c) provides that it *would not be an infringement of
   copyright*, ... to make, distribute or display *pictures of the articles in
6  advertising*...." (Emphasis added.)

7  Thus, under the House Report's categorization of section 113(c), a picture that

8  "portrays, depicts, or represents an image *of a useful article*"  – referred to also as

9  making, distributing or displaying "pictures *of the articles* in advertising," then

10 "would not be an infringement of copyright" to do so "in advertising."

11 Congress' sole focus is on the *picture* or a *photograph* of the useful article, not a

12 picture or photograph *on* the useful article, as EVOX contends.

13 **D. *Evox' Improper Rules of Construction in 'Fair Use' Do Not Apply*.**

14 EVOX further contends that Your Honor should overlay fair use factors, and thus

15 construe narrowly section 113(c). In fair use under section 107, EVOX contends that

16 one of the factors that does not favor fair use is if the use is a commercial purpose.

17 But Congress in section 113(c) was addressing a specific situation that it

18 determined the use was "fair." This is unlike section 107 where fair use involves the

19 balancing of many factors by a trier-of-fact to determine whether a use was 'fair.'

20 On a similar specific exemption in section 120, the Ninth Circuit said in *Leicester*

21 *v. Warner Bros*., 232 F.3d 1212, 1219-20 (9th Cir. 2000) that when Congress tailors a

22 *specific* exemption from copyright rights, Congress' intention is different than a

23 balancing test under fair use. Congress instead specifically intends to "shift from the

24 prior regime of relying on '*ad hoc* determinations' of *fair use*" to simply focus upon

25 the *specifics* of the exemption. *Id.* The Ninth Circuit then said that Congress "[h]aving

26 done this, it would be counterintuitive to suppose that Congress meant to restrict" the

27 exemption any further by resort to any *ad hoc* fair use factors. *Id.*

28

### E.  *Section 113(c) Does Not Overrule Skyy I*.

Next, EVOX contends that if Your Honor applies the language of section 113(c) to permit Defendant CALRAC's use, the Court would "effectively be overruling *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000)." (EVOX OPPOSITION at 2:3-4.) This is absurd. Section 113(c) was neither considered nor discussed in *Skyy I.* Nor did the facts in *Skyy I* involve a public advertising by a person for sale or rent of a useful article. Two photographers of the same vodka bottle sued each other for infringement.

### F.  *'Fair Return for Labor' Argument Rejected by Supreme Court*.

Next, EVOX contends Your Honor should disregard the plain meaning of section 113(c) because the effect would be to deny a fair return on EVOX's "creative labor." EVOX cites a case supporting the sweat-of-the-brow theory of copyright — *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1527 (9th Cir. 1992). However, this 'sweat-of-the-brow' principle was soundly rejected in *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.* (1991) 499 U.S. 340, 361. By 1999, the Ninth Circuit corrected itself, and followed *Feist* on this point. In *CDN Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999) the Ninth Circuit said:

> That this process takes much time and effort is **wholly irrelevant** to whether the end product of this work is copyrightable. See *Feist*, 499 U.S. at 349. The Supreme Court in *Feist* **expressly rejected the "sweat of the brow" theory of copyright** which would protect subject matter that was expensive and time-consuming to gather. *See id.* at 352-56. Copyright rewards originality, not effort." *Id.* at 364. (Emphasis added.)

### G.  *Can Section 113(c) Apply to Artist's Product Paintings?*

Finally, EVOX questions whether Congress could legitimately restrict rights in photographs. It cites the U.S. Constitution, Art. 1, §8's purpose to protect the original creation of artists. (OPP., at 6:12-13.) EVOX  suggests 'hard' examples involving paintings of products to raise doubts about the legitimacy of section 113.

EVOX's two examples involve paintings. Paintings qualify as "pictures" under section 113(c). However, both examples do not call into question the Constitutionality of section 113(c) as to a product photograph. Product photographs generally fall under

slavish copying or the *de minimis* rule, and there is no serious Constitutional concern.

EVOX's first example to raise concern about the fairness of section 113(c) is about an artist who "paints a yacht." He later finds out a yacht company has used the painting as the "centerpiece of a yacht company's ad campaign...." (Motion at 6:17-23.)

However, these facts do not come within section 113(c). This example is about a painting of ***a yacht,*** which is not described as being offered for sale. Rather, EVOX described the picture used as a "centerpiece" for selling *all kinds of yachts*, and not that particular yacht. Hence, this example would not fall under section 113(c).

EVOX raises a second example of Andy Warhol's famous painting of 30 Campbell Soup Cans. These cans were exactly identical to the actual cans in coloring, shape and titles — except the 30 were assembled in several rows.[3] If one used this "picture," and cropped a single can out to sell the product in public advertising, and assuming a can of food is a useful article, then section 113(c) would apply. EVOX appears to imply this is a problem because Mr. Warhol is an *artist.* However, this work has all the appearance of beginning as an exact stencil sketch. This work is as slavish a work as one can find. Congress has made a correct determination in the scope of copyright in the specific circumstances set forth in section 113(c).

**II. EVOX TURNS AROUND AND EMBRACES SECTION 113(C).**

EVOX extraordinarily reverses itself on the issue of section 113(c) much later in its brief. It does so when it confronts its impossible hurdle to defend its derivative use of the car designs without any appropriate license to do so. At pages 19-20 of EVOX's Opposition, EVOX embraces section 113(c). It applies it to itself. EVOX is no longer inventing strange distinctions about it only applying to exempting photos on coffee mugs. To create the consent it *thinks* it needs to sue on a derivative use (it needs an exclusive license, not mere consent), EVOX resorts to arguing at 19:20-20:5:

---

[3]https://www.moma.org/learn/moma_learning/andy-warhol-campbells-soup-cans-1962

1
2
> Section 113(c) gives EVOX the right to make and distribute photos of useful articles of cars, without permission of the owners of copyrightable elements incorporated into those useful articles.

3   The immediate puzzle is how can EVOX satisfy section 113(c)'s requirement that

4   it is "offering for sale or other distribution" useful articles in advertisements? This is a

5   specific circumstance that limits *who* can exploit this exemption.

6   EVOX believes that is easy. Because Defendant CALRAC alleged it was "offering

7   the cars for sale or other distribution," this supposedly necessarily should apply

8   equally to EVOX. (EVOX OPP., at 20:6-7). However, EVOX is not doing the same

9   thing as the Defendant. Plaintiff EVOX instead is *licensing* photographs of cars.  It is

10  not selling or renting the cars. EVOX may be selling or licensing photographs to

11  people who *enjoy* section 113(c)'s exemption, and thus EVOX is not a contributory

12  infringer. However, EVOX certainly does not have a right to sell, rent or license

13  photographs of cars to *third-parties* without proper license from the car

14  manufacturers. This in fact is what EVOX tells its customers – the customer may have

15  a "fair use," but EVOX does not transfer any rights to use the car images or trademark

16  logos within their photographs. (CALRAC MSJ SUF ## 16-21.)

17  As a result, EVOX by page 20, has destroyed its entire earlier effort to rebut

18  Defendant's application of section 113(c).

19  The next puzzle is how can EVOX exploit section 113(c), but this section would

20  not apply to Defendant CALRAC?  EVOX never explains how it can use section

21  113(c) but Defendant CALRAC cannot. It appears EVOX has jettisoned its earlier

22  arguments in order to embrace section 113(c) somehow solely for its own benefit.

23  Regardless, section 113(c) simply on its face does not apply to a party who sells or

24  licenses *photographs* of automobiles. Section 113(c) applies only to someone who

25  "offers for sale" or "other distribution" a useful article.

26  ### III.   EVOX MADE DERIVATIVE USES OF OTHERS' WORKS.

27  ### A.   *Evox Has Unwittingly Admitted A Derivative Work*.

28  EVOX has admitted that its works are derivative uses.  EVOX says at page 9:12-

13, "As Defendants admit, ***EVOX's photos are based upon useful articles: cars***."

Yes, indeed, EVOX is correct these automobiles are useful articles. However, they are useful articles which ***fit the rule*** in section 101 used in *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1080 (9th Cir. 2000) — *Skyy I.* The Ninth Circuit recognized that a photograph is a derivative use of a copyright-protected object it displays (§ 106(2)) — but only when a useful article is copyrightable. This occurs when it has a "distinctive shape," or "special design features," etc*.,* and thus qualifies as a copyright-protected pictorial, graphic or sculptural work under section 101.

In section 101, a derivative use is a work that has "adapted" a preexisting copyrighted work – here ***the cars*** into a photograph. Section 101 defines a "derivative work" in material part as follows:

> A 'derivative work" is a work based upon one or more preexisting works, such as a ...art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'

## 1. Why Does Derivative Use Matter?

Why is derivative use so important here? The first reason is that the Copyright Office will not register an unlawful derivative work. This affects EVOX's standing, as well as the issue about *non-disclosure* of a preexisting work under section 409(9) discussed in Part IV *infra.* The latest Copyright Office's *Compendium of U.S. Copyright Offices Practice* (2014)[4] — "*Compendium*" — makes clear the problem. Without a lawful use from the copyright owner of preexisting material, the Copyright Office will ***reject*** the registration. In section 907.2, the Copyright Office's *Compendium* explains its concern for infringement upon another's copyright:

> **Permission to Use Preexisting Material**. Authors often incorporate material created by third parties into their visual art works, such as a third party photograph that is used in a collage or third party clip art that is used in a logo. Generally, if the third party material is protected by copyright, the applicant ***must exclude that material from the claim*** using the procedure described in Chapter 600, Section 621.8....The U.S. Copyright Office ***generally does not investigate the copyright status of preexisting material or investigate whether it has been used***

---

[4] http://www.copyright.gov/comp3/docs/compendium.pdf

*lawfully*. However, the registration specialist may communicate with the applicant to determine whether permission was obtained where a ***recognizable preexisting work has been incorporated into a visual art work***. The applicant may clarify the lawful use of preexisting material by including a statement to that effect in [in the application or by letter]. ***If it becomes clear that preexisting material was used unlawfully***, the registration specialist will ***refuse to register the claim***.

However, if a derivative use is merely authorized, it serves only as a defense for the one so authorized, *e.g.*, the copyright owner sues the permittee. Yet, for EVOX to have a lawful right in a derivative use sufficient to sue *others*, EVOX needs more than permission; it needs a transfer of the exclusive right to make a derivative work in the photographic medium.[5]  Otherwise, such exclusive right belongs to the manufacturers who designed the subject cars. *See,* section 106(2).[6]  Without an exclusive license, EVOX  lacks standing to sue a third party upon a derivative work. *Hyperquest*, *supra*.

Here, when these principles apply, EVOX's suit necessarily must be dismissed. For an exclusive license means that these manufacturers gave EVOX, and only EVOX, the right to make such photographs.[7] And all exclusive licenses must be in writing; otherwise, they are invalid under section 204(a).[8] Because EVOX admits it has ***no licenses from the car manufacturers whatsoever*** for taking photographs of their cars or trademarks (CALRAC MSJ SUF ## 16-21), EVOX cannot sue upon works that are derivative uses belonging to another. This action must be dismissed.

---

    [5]  *Hyperquest, Inc. v. N'Site Sols., Inc*., 632 F.3d 377, 382 (7th Cir. 2011) (suit against a third-party on derivative work made by plaintiff to copyrighted software belonging to another lacks the exclusive property right for standing under section 501(b) without an exclusive license from the copyright owner of the software).

    [6] Section 106(2) reads: "Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:...(2)  to prepare derivative works based upon the copyrighted work;...."

    [7] The Court in *Minden v. John Wilely & Sons*, 795 F.3d 997, 1005 (9th Cir. 2015) explained that an "exclusive" license "permits the licensee to use the protected material for a specific use and ***further promises that the same permission will not be given to others***. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996)."

    [8]A written license is necessary to transfer an exclusive license to make copies or a derivative use, due to section 204(a). *Effects Assocs. v. Cohen*, 908 F.2d 555, 556, 558 (9th Cir. 1990).

**B.** _**Evox Is Wrong that Skyy I Is A Hard and Fast Rule About Useful Articles**_.

EVOX contends that there is a hard and fast rule that any useful article, _ipso facto_ never has copyright protection.[9] EVOX cites _Skyy I_ as supposedly "applying this principle." (EVOX OPP., at page 8:17.)

This is _not true._

As a result of this erroneous "belief," EVOX claims complete victory by the mere fact alone that Defendant CALRAC's "own admission [is that] EVOX's photos are...based upon useful articles" which EVOX contends are categorically "**_not subject to copyright_**." (EVOX OPP., at 8:14-16.)

But it is entirely false that useful articles under no circumstances can be copyright protected. The Ninth Circuit in _Skyy I_ explained _when_ a useful article can _sometimes_ be copyright protected under section 101's definition of pictorial, graphic or sculptural works. The _Skyy I_ analysis began with section 101's definition of those three categories. The Court skipped over this first sentence which importantly reads:

> "Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans.

Then _Skyy I_ continued, and quoted how section 101 mandates copyright-protection analysis of '_**useful articles**_' to determine _when_ they can be protected. The Court in _Ets-Hokin v. Skyy Spirits, Inc._, 225 F.3d 1068, 1080 (9th Cir. 2000) said:

> Under the Copyright Act, the design of a _**useful article**_, such as a bottle, is not protected **unless** the _**design includes features that exist separately from utilitarian ones**_:

> Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural _**features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article**_. 17 U.S.C. §101. (Emphasis added.)

---

[9] Hence, EVOX intends that no derivative use rights exist in favor of any major auto manufacturer over sculptural designs within their vehicles.

The "unless" in that sentence destroys EVOX's entire assertion that *Skyy I* had a hard-and-fast rule about useful articles. The Ninth Circuit explained in the same context that if a useful article qualified as having a copyrightable design under this standard of section 101, that a photograph of a useful work would be a derivative work of the designer of the useful article. *Id.*, 225 F.3d at 1078.

In *Skyy I*, however, the Court found that neither competing product photographer would infringe upon a derivative use of the designer of the bottle because the "Skyy vodka bottle [*i.e.*, the useful article in the photograph], although attractive, has ***no special design or other features*** that could exist independently as a work of art. It is essentially a functional bottle ***without a distinctive shape***....," and thus did not qualify as a copyrightable work, and *de facto* was not a derivative work. *Id.*, 225 F.3d at 1080. "In this case, the district court did not identify any artistic features of the bottle that are separable from its utilitarian ones. We also find none." *Id.*, at 1080.

Here, this is a very different case. Defendant CALRAC's auto-design expert provided undisputed facts that each automobile in the 149 PHOTOGRAPHS had separable distinct design elements that can exist separately as a "sculptural work."[10] This included grilles, graphical logos and slope lines on the car's exterior (distinguishable shapes that were not present with the vodka bottle). As such, they are automatically protected under section 102(a) "upon their creation" in a fixed tangible form.[11]  No reasonable juror could disagree.

As the Second Circuit said in *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490-491 (2d Cir. 1976), "useful articles" often satisfy the minimal standards of

---

[10]  Giovanni Bonello, a world-class auto design expert, provided a declaration that each subject automobile had distinct and separable design elements that stand as separable art either in their entirety with prominent trademark logos, appreciated as such at car shows or in toy models; or in physically separable parts as grilles on walls or steering wheels in young children's rooms. CALRAC MSJ SUF ##22-60.

[11] *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 552 (1985)("Among [the 1976 Act's] other innovations, it...extended statutory protection to all works ***from the time of their creation***.") *See also, S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989)("Copyright protection ***subsists from the moment*** the work is 'fixed in any tangible medium of expression.' 17 U.S.C. § 102(a).")

originality, for "it has been established that **mass-produced commercial objects** with a **minimal element of artistic craftsmanship** may satisfy the statutory requirement of such a work."

Now EVOX's admission on page 9 takes on importance. It admitted that "EVOX' photos are **based upon** useful articles: **cars**." (EVOX OPP., at 9:12-13)

As the cars have indisputable sculptural design elements, the rule in *Skyy I* dictates that each photograph is based upon a "copyright protected" work, and is thus a derivative work under section 106(2). *Cf., Gaylord v. United States*, 777 F.3d 1363, 1366 (Fed. Cir. 2015) (held that a photograph of a sculptural work is a derivative work of the owner of the sculptural work under section 106(2).)

Hence, EVOX needs a written exclusive license from the car makers to do what it is doing. EVOX certainly has no standing to sue under 501(b).  *Hyperquest, supra.*

### C.   *Evox Misleads that A Useful Article Never Has Copyright Protection*.

EVOX makes several snippet quotes to supposedly prove a hard-and-fast rule against useful articles ever enjoying copyright protection. Instead, each of these cases are in accord with *Skyy I*, as we just discussed, that *sometimes* useful articles have copyright protection depending on separable design elements.

One of these cases is worth discussing for it states the Copyright Office's procedures with useful articles that are submitted.

This is the case of *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989). EVOX quotes the following quote out-of-context to suggest a hard-and-fast rule: "In any event, the useful articles *standing alone* may never be registered." (EVOX OPP., at 8:11.)  What about in context? The next sentence says: "The registration [of a useful article] must describe the separable elements." *Id.,* citing the Copyright Office's *Compendium* instructions. Hence, *Whimsicality* explained a *useful article* can be submitted for registration, and its separable design elements can be accepted for registration when properly identified. The Court also affirms the same principles as in *Skyy I* of when a *useful article* is copyright protected: "[T]he pictorial, graphic and sculptural **aspects of useful articles** may be copyrightable if they are

separable from the article, **_physically or conceptually_**....” _Id._

This underscores that a useful article, like any other registration which has some elements that are copyright protectible, and others that are not, can be accepted for registration. The Copyright Office will delineate the scope of copyright in the registration of a useful article. It is only true that _standing alone_ with no ability to identify separate design elements that it cannot be registered.

### D.   _Ornamental Designs (Steering Wheels, Grilles) Are Protected_.

Next, EVOX clearly implies at 13:16 that the Copyright Office spoke about an “ornamental wheel cover on a vehicle” as if it lacked any copyright protection merely because it was a useful article. This was a highly misleading quote from a webpage of the Copyright Office. In context, it clearly says the opposite. The Office says it is covered. The full sentence merely said: “An article that is normally part of a useful article may itself be a useful article, for example, an ornamental wheel cover on a vehicle.” http://www.copyright.gov/register/va-useful.html   Then based upon what follows, the Copyright Office clearly would protect the _ornamental_ steering wheel. The same page says:

> [A] useful article may have both copyrightable and uncopyrightable features. For example, **_a carving on the back of a chair_** or a **_floral relief design_** on silver flatware could be protected by copyright, but the design of the chair or flatware itself could not.

Similarly, the _Compendium_ from 2014 actually uses a similar example of what _it would copyright_ in a useful article on a car: “Physical separability means that the useful article contains pictorial, graphic, or sculptural features that can be separated physically from the article by ordinary means while leaving the utilitarian aspects of the article completely intact. _Example_. A sufficiently creative decorative hood **_ornament_** on an **_automobile_**.” (§924.2(A).)

Defendant CALRAC has demonstrated at least physical or conceptual separability of the grille, steering wheels, and styling lines in the 149 PHOTOGRAPHS. CALRAC MSJ SUF ## 22-27.

E.  *Protection for Decorative Flourishes & Swirls Within A Shape of A Car*.

A car as an overall shape may not be copyrightable, just like a chair or a typeface cannot be copyrighted as such. However, due to decorative flourishes and swirls of styling lines, there are distinguishable portions of car designs that are memorable and identifiable. This satisfies the conceptual separability test in section 101. *See also*, Copyright Office's *Compendium* (2014) §924.2(B)("Conceptual separability" test.) The *Compendium* says the "artistic feature" must be "capable of being visualized ...as a work of authorship that is independent of the overall shape of the useful article."

This was addressed in *DC Comics v. Towle,* 989 F.Supp.2d 948, 970 (C.D.Cal. 2013) when a maker of a toy version of the Batmobile claimed it was a useful article, and had no copyright protection. The Court found numerous styling lines that rendered the Batmobile's design elements protectible in copyright:

> Nonetheless, the design elements of the two Batmobiles at issue here are *conceptually separable* from their underlying car. In particular, the 1989 Batmobile's *entire frame*, consisting of the rear exaggerated, sculpted bat-fin and the mandibular front, *is an artistic feature that can stand on its own without the underlying vehicle*. The underlying vehicle would *still be a car without the exaggerated bat features*. Further, the Batmobile's wheels each contain *a hubcap containing a bat sculpted from metal*, which can literally stand on its own without the underlying wheel. Similarly, the 1966 Batmobile contains features that are conceptually separable from the underlying vehicle. For example, the doors have imprinted upon them *red bat logos*......The wheels have hubcaps containing a bat sculpted from metal. The rear of the vehicle is *scalloped* and intended to look like bat wings. These elements are conceptually separable from the car itself.

Analogously, the latest *Compendium* explains how to measure when *typefaces* can be copyrighted. A typeface, section 906.4 says, can have pictorial or graphical elements "used to *decorate* uncopyrightable characters [which] may be *separable* from the utilitarian form of the characters." This can include "original pictorial art that forms the *entire body or shape of the typeface*, such as the representation of an oak tree," etc. Also, "*ornamentation* that is separable from the typeface characters" such as "*flourishes, swirls*, vector ornaments, scrollworks, *borders*, frames and wreaths, and the like represent works of pictorial authorship." *Id.*

The same is true for an automobile. CALRAC's expert established the styling lines, grilles, and steering wheels were separable, memorable, and were 'ornamental'

shapes.

### F. *Evox's Errs that A Pre-Production Model Is Tested Like A Useful Article Just Because Identically Used Later in A Useful Article*.

### 1. **The Mazer Rule on Pre-Production Models**

EVOX contends the Supreme Court decision in *Mazer v. Stein* , 347 U.S. 201 (1954) has had no impact on the 1976 Act in protecting non-functional models differently than the useful article which they later become. EVOX argues, albeit misstating Defendants' point: "*Mazer* did not hold that any useful article could be copyrighted if based on a prototype that could be spun as artistic." (EVOX OPP., at 17:10-12.)

EVOX is wrong. The *Mazer* rule is that a model is protected as a model regardless of the later intention to make it into a useful article. (The Supreme Court in *Mazer* was adopting the Ninth Circuit's view, rejecting that design patents were the only protection.)[12]  The *Mazer* rule is reflected in numerous places in the 1976 Act, and in the Copyright Office's 37 C.F.R. § 202.10 (a) (2016)),[13] as well as in that Office's latest *Compendium* from 2014 in §919.

First, in section 101 enacted in 1976, a "sculptural work" subject to copyright protection includes "***models.***"

Second, the definition of a "useful article" in section 101 excludes as a "useful

---

[12] In *Mazer*, the Supreme Court approved *Rosenthal v. Stein*, 205 F.2d 633, 635 (9th Cir. 1953), specifically as to this holding: "The theory that the use of a copyrighted work of art loses its status as a work of art if and **when it is put to a functional use** has no basis in the wording of the copyright laws.'"

[13] "In order to be acceptable as a pictorial, graphic, or sculptural work, the work must **embody some creative authorship in its delineation or form**. The registrability of such a work **is not affected by the intention of the author as to the use of the work** ...." 37 C.F.R. § 202.10 (a) (2016).

article" anything that serves to "portray the appearance of [a useful] article."[14] This clearly exempts a preproduction car model from being a useful article because it serves only to portray what is intended later to become a useful article.

Third, the latest Copyright Office *Compendium* §919 (2014) states that "model cars" in their "design" are "typically protected" as "sculptural works"— hence they are not treated as useful articles even though such may be intended. It states in full:

> For purpose of copyright registration, a model is a three-dimensional replica or ***depiction of*** an object or ***design***, such as a ***model car*** or an architectural design. ***Models*** are ***typically protected*** under U.S. Copyright law as ***sculptural works***, although they may also include pictorial or graphical elements.

As Defendant CALRAC's moving papers demonstrated, all manufacturers in the 149 PHOTOGRAPHS first make a full-scale "PRODUCTION MODEL" in wood or cast resin that in its form is identical to the vehicle later which is manufactured. The model differs only in that it subtracts from use only the space necessary to fit an engine and chassis in the manufactured version. CALRAC MSJ SUF ## 28-35.

What is the consequence? The *Mazer* test of originality applies to preproduction models that are nonfunctional. The Supreme Court held that a statue – even though it was later reproduced as a useful article as a part of a lamp – was protected as "art" in its "**form**," distinct from its later "mechanical or utilitarian" functions.[15] As such, a pre-production model's originality is measured by the "beauty" of its "***form***" along a liberal scale,  and does not "permit a narrow or rigid concept of art." (*Mazer v. Stein*, 347 U.S. 201, 213-14 (1954). The current Copyright Office's regulations agree. It is protected as long as it has "some creative authorship in its delineation or ***form***" regardless of what is the intent on how to use it later (*e.g.*, making its design into a

---

[14]"A 'useful article' is an article having an intrinsic utilitarian function that is not ***merely to portray the appearance of the article*** or to convey information."

[15] The statute embodied in the lamp was protected as to its "form but not their mechanical or utilitarian aspects...." *Mazer*, *supra*, 347 U.S. at 212-213.

1  useful article). See fn. 13 *supra*.

2      As a result, there is no need to engage in the "separability" test in section 101

3  which applies to useful articles with "utilitarian" features. The principle simply does

4  not apply to a nonfunctional model. Nor is there any issue about the beauty of the

5  form. Rather, both *Mazer* and Regulation 202.1(a) speak of protection of the beauty of

6  its "form" and "delineation." Hence, aesthetics of the entire design of a precedent

7  production model has copyright protection of its entire form based upon that

8  preproduction model. The benefits accrue to automobile manufacturers that the

9  manufactured version is a *copy* of this prior preproduction version, with it expanded

10 scope of measuring originality.

11        2. **Evox's Distorted Reading of Omega**

12     EVOX contends at page 17 of its OPPOSITION that a concurrence by Judge

13 Wardlaw in the Ninth Circuit opinion *Omega S.A. v. Costco Wholesale Corp*., 776

14 F.3d 692, 702 (9th Cir. 2015) supposedly disagrees about the meaning of *Mazer*.

15 However, in context, she fully agrees with CALRAC that it was a preproduction

16 version of a lamp's base that was at issue. *Id.*

17     Then EVOX quotes from her finding of copyright misuse by Omega where she

18 reaffirmed "the **general** rule against granting copyright protection over useful

19 articles." Contrary to how EVOX reads this, Judge Wardlaw carefully chose her words

20 – she referred to the "***general*** rule against granting copyright protection over useful

21 articles." This matches section 101's definition that has a general rule against

22 copyright protection unless separability exists. The point is that Judge Wardlaw did

23 not speak of hard-and-fast rule, but a general rule.

24     **IV.    COPYRIGHT PROTECTION OF TRADEMARKS**.

25     EVOX at pages 17-19 contends that there is *categorically* no copyright in

26 trademarks. It failed to discuss *Skyy I* to the contrary relied upon in our motion.

27     Instead of discussing *Skyy I*, EVOX retreats into an out-of-context quote of

28

Copyright Office Regulation 202.1(a). EVOX ignores Regulation 202.10(b). the Ninth Circuit in *Skyy I* relied upon its language to recognize copyright protection over trademarks that have copyrightable graphics and related text. This regulation reads in part that the Copyright Office "will register a properly filed copyright claim in a print or label that contains the requisite qualifications for copyright even though there is a trademark on it." 37 C.F.R. § 202.10 (b) (2016).

Moreover, EVOX has conceded the operative rule on copyrightability of trademarks in *Ets-Hokin v. Skyy Spirits, Inc.,* 225 F.3d 1068, 1080-1081 (9th Cir. 2000) – *Skyy I* because its opposition did not challenge this quote in our motion. The Court in *Skyy I* held:

> Although a label's "***graphical illustrations***" are ***normally copyrightable***, "textual matter" is not – at least ***not unless*** the text "aids or augments" an accompanying graphical illustration. 1 *Nimmer* § 2.08[G][2], at 2-136. The label on Skyy's vodka bottle consists only of text and does not include any pictorial illustrations.

In response, EVOX cites inapposite decisions or Copyright Office *Compendium* sections which EVOX then incorrectly describes. First, EVOX cites a case that supposedly found text alone in very short length is "probably" lacking copyright protection. No such quote can be found in the opinion.[16] Regardless, a short piece of text according to *Skyy I* can be copyrighted if it "aids" or "augments" an "accompanying graphical illustration," such as "Ford" and "Jeep" do here.

Another decision EVOX cites said the name "Luminous Lyrics" *by itself* as a matter of law cannot be the basis of a copyright action.[17] It had no graphics in conjunction. Under *Skyy I,* such text is only copyrightable if it aids or augments a graphical element in a trademark symbol. EVOX cited an unnecessary case.

---

[16] *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1524 n. 7 (9th Cir. 1992). The words "de minimis" etc. are not present, apparently removed by the Ninth Circuit.

[17] *Chestang v. Yahoo Inc.,* No. 2:11-CV-00989-MCE, 2012 WL 3915957, at *5 (E.D. Cal. Sept. 7, 2012)(in pro per obtained registration on simply his trade name).

EVOX lastly claims that the current *Copyright Compendium* from the Copyright Office in section 606 supposedly says "*logo* designs" (***EVOX' words***) "with '*familiar* symbols like a stop sign, or a happy face, or five-pointed star*" (*Compendium*'s words) are not copyrightable. (EVOX OPP., at 19:4-5.) But the *Compendium* in section 606 says nothing about "logo designs." Rather, the *Compendium* (available online)[18] in section 606 only says if a "stop sign, a five pointed star, or a happy face" is used, the Copyright Office may send a warning that "that some of the designs within the portfolio are not copyrightable." Elsewhere, section 313.4(J) says only that "***familiar*** symbols and designs are not copyrightable." Nothing about logos in either section.

In fact, the *Compendium* never mentions a *logo* except to say it can be copyright protected. Section 913, entitled "Trademarks, Logos and Labels," addresses the Copyright Office's view as of 2014 on copyrightability of trademarks and logos. In fact, it cites Regulation 202.1(b) which *Skyy I* also relied upon to extend protection:

> A visual art work that is used ***as a trademark, logo, or label may be registered*** if it satisfies "the requisite qualifications for copyright." 37 C.F.R. § 202.10(b). The authorship in the work may be pictorial, graphic, or in rare cases sculptural, or the work may contain a combination of these elements. When reviewing an application to register a trademark, logo, or label the U.S. Copyright Office will examine the work to determine if it embodies "some creative authorship in its delineation or form." *Id.* § 202.10(a). (*Id.*, §913.1.)

The truth is simple: these trademark logos here are each graphical works, and in two cases ("Ford" and "Jeep") the name is connected closely with a graphic and grille design that matches. Trademark logos affect 95 photographs of the 149 Photographs, including twenty-seven that were close-ups of the trademark logos on the steering wheel. CALRAC MSJ SUF ## 49, 52.

Clearly, EVOX made a derivative use without proper license from the owners' of

---

[18] http://www.copyright.gov/comp3/docs/compendium.pdf. This 2014 version replaced the last *Compendium* that was more than "two decades" earlier. See http://www.copyright.gov/comp3/

1     these trademark logos in 95 uses.

2     **V.  EVOX'S 'CONSENT' ARGUMENT FOR DERIVATIVE USE**.

3     EVOX apparently gives up completely on its earlier arguments about section
4 113(c). It no longer argues that section 113(c) only applies to exempt use of
5 photographs *on* a useful article. Now EVOX itself supposedly has the right to use a
6 photograph of a "useful article" in advertising without violating the rights of the
7 copyright rights of anyone, including the car makers. EVOX is embracing section
8 113(c) now to not lose the issue of derivative use.

9     How EVOX can claim this right under section 113(c) only benefits itself, and not
10 Defendant CALRAC over EVOX's photographs for itself, is never explained.

11     Regardless, section 113(c) does not apply to EVOX. As explained at length in Part
12 II *supra*, section 113(c) only gives an exemption to those who "offer for sale" or other
13 distribution a useful article in connection with an "advertisement." EVOX does
14 neither. EVOX instead is advertising a license to use its photographs. It is not selling
15 or renting the cars depicted in its photographs.

16     Furthermore, section 113(c) can only be construed as a *non-exclusive* right to
17 *infringe* on what otherwise is a section 106(2) derivative use right.[19] Congress did not
18 grant section 113(c) permittees an exclusive license to make derivative uses of the
19 copyrightable designs belonging to makers of useful articles.

20     The Ninth Circuit stated recently that a similar  use-exemption statute merely
21 provides a defense to infringement, *i.e.*, fair use in section 107.[20] A non-exclusive
22 license has that effect. Hence, if EVOX could invoke section 113(c), it has no more
23 than a *non-exclusive* license. Thus, EVOX still would not be able to sue a third-party
24 like Defendant upon a derivative use that is only a *non-exclusive* authorization.

25

26     [19] Section 113(c) reads in part that "***copyright does not include*** any ***right to***
27 ***prevent the making, distribution, or display of pictures or photographs*** of such [useful] articles in connection with advertisements."

28     [20] *Lenz v. Universal Music Corp*., 815 F.3d 1145, 1152 (9th Cir. 2016)(a protected fair use under section 107 is a "right" that renders one using copyrighted materials as "***not an infringer*** of the copyright with respect to such use.")

1    *Hyperquest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 382 (7th Cir. 2011).

2    **VI.    EVOX'S PHOTOS LACK 'ORIGINALITY.'**

3    EVOX claims *Skyy I* proves their photographs are not slavish copies. However,

4    later in *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003) – *Skyy II*,  the

5    Court found the competing photographs by two photographers of the same bottle

6    lacked sufficient originality to enforce any copyrights. So *Skyy I* is hardly relevant.

7    EVOX also claims that because the Court in *Schrock v. Learning Curve Int'l, Inc.*,

8    586 F.3d 513 (7th Cir. 2009) found a 'creative process' behind photographs of

9    'Thomas & Friends' toys justified copyright protection. However, the better view is a

10   decision following *Sky I* and *Sky II* in the Tenth Circuit involving a Toyota automobile

11   and a digital-model representation of a Toyota vehicle for use in product advertising.

12   The Court in *Meshwerks, Inc. v. Toyota Motor Sales U.S.A.* (10th Cir. 2008) 528 F.3d

13   1258, 1265 held it was a slavish copy:

14   > But *Skyy I* tells **only half the story**. The case soon returned to the court
15   > of appeals, and the court held that the defendant's photos, which
     > differed in terms of angle, lighting, shadow, reflection, and
16   > background, did not infringe on the plaintiff's copyrights. *Ets-Hokin v.
     > Skyy Spirits, Inc.*, 323 F.3d 763, 765 (9th Cir. 2003) (*Skyy II*). Why?
17   > The only constant between the plaintiff's photographs and the
     > defendant's photographs was the bottle itself, id. at 766, **and an
18   > accurate portrayal of the unadorned bottle could not be copyrighted**.
     > (*Meshwerks, Inc. v. Toyota Motor Sales U.S.A.* (10th Cir. 2008) 528
19   > F.3d 1258, 1265.)(Emphasis added.)

20   The Court found that Meshworks slavishly copied the Toyota vehicles — even

21   though Meshworks's described its "creative" process as involving 90 to 100 hours per

22   vehicle of manual 'modeling' and 'sculpting.' The Court said all this effort and labor –

23   described by Meshworks as 'creative' –  was simply to ensure the final photo-ready-

24   wire model would "resemble each [Toyota] vehicle as closely as possible." *Id.*, 528

25   F.3d at 1260. Citing *Feist*, the Tenth Circuit held "***creative decision-making*** in the

26   process is ***insufficient*** to render the ***product original***." *Id.*, 528 F.3d at 1268 n.10.

27   (Emphasis added.) Hence, the slavish copying rule applied.

     **VII.    EVOX'S FAILURE TO DISCLOSE TO THE COPYRIGHT OFFICE**

28   EVOX contends it did not have to disclose to the Copyright Office the presence of

---

the automobiles and logos in their photographs because there are "no preexisting works in EVOX's photos." (EVOX OPP., at 22:14.)  It says this is for "reasons above," and offers no hint at *why*. Moreover, EVOX still refuses to waive its attorney-client privilege to offer counsel's detailed explanation why his client relied upon his advice in not making the disclosure necessary under section 409(9).[21]

EVOX's indefensible claim is still not defended. It is also clearly preposterous that the cars and trademark logos are not preexisting works.

Section 409(9) requires disclosure in the answers to the application form an identification of all "preexisting works" in the submission that are *not original* with the applicant upon which the work is based; then the statute mandates *on the application* an explanation why the additions justify a copyright. The application allows the Copyright Office to pass upon the "originality of the works submitted." *Gener-Villar v. Adcom Group, Inc.*, 560 F.Supp.2d 112, 126 (D.P.R. 2008).

Hence, any work not original with the applicant must be disclosed on the application under question 6(a).

By EVOX's deliberate non-disclosure gave a false impression. As Nimmer explains, a photographer misrepresents when he leaves it to be assumed he is claiming originality over preexisting works in his photographs that he did not create:

> As Professor Nimmer has commented in connection with the predecessor technology of photography, "[a]s applied to a photograph of a ***pre-existing product***, that bedrock principle [of originality] means that ***the photographer manifestly cannot claim to have originated the matter depicted therein*** . . . ." Nimmer on Copyright § 3.03[C][3]. (*Meshwerks, Inc. v. Toyota Motor Sales U.S.A.*, 528 F.3d 1258, 1265 (10th Cir. 2008).)(Emphasis added.)

EVOX knew its obligations was to disclose any matter it did not originate in the photograph because it knew the Copyright Office would have applied the slavish doctrine had it told the truth.

---

[21]"An application for copyright registration shall be made *on a form* prescribed by the Register of Copyrights and shall include (9)...an identification of any ***preexisting work*** or works that it is based upon or incorporates, and a brief general statement of the ***additional*** material covered by the copyright claim being registered."

As to photographs, the Copyright Office has warned already it applies the slavish copy doctrine – obviously a review EVOX avoided by its silence:

> A work that is a mere copy of another work of authorship is not copyrightable. The Office cannot register a work that has merely copied from another work of authorship without any additional authorship.... "one who has slavishly or mechanically copied from others may not claim to be an author"... "*exact photographic copies* of public domain works of art would not be copyrightable under United States law because they are not original.") (*Compendium*, §313.4(A).)

> Examples of works that cannot be registered as derivative works, because they contain *no new authorship* or only *a de minimis amount* of authorship include the following types:
> • *Photocopies* and digital scans of works.
> • Mere *reproductions of preexisting works*. (*Compendium*, §907.1)

Also, the *Compendium* explains "[m]erely ... producing the source work in a new medium is not sufficient to warrant copyright protection." (*Id.*, §919.1.)

Just as summary judgment was found in *Whimsicality*, EVOX is no less guilty of a "knowing failure" to advise the Copyright Office of "facts which *might have* occasioned rejection of the application." *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 456 (2d Cir. 1989)(summary judgment).

EVOX knew disclosure on the application that these were product photographs would have put it under the scrutiny of the slavish copy doctrine. It materially failed to disclose facts that would, as *Whimsicality* states, "which might have occasioned rejection of the application." For the same reasons here, EVOX's registrations must all be found lacking in evidentiary value under 17 U.S.C. §410(c), and be rendered invalid in this proceeding.

EVOX lastly responds to a finding of fraud on the Copyright Office that in fact it did disclose – not on the application, but on the titles and photo names submitted in conjunction. However, question 6 is specific. Section 409(9) is about the *form*, and requires under section 409(9) the answer to *two question* on each submission. See fn. 22. It does not ask for disclosure in the title or in the name of a computer file.

In sum, EVOX deliberately evaded the Copyright Office's slavish copy review by its blatant non-disclosure. It offers no explanation. It does not prove any accident. It was designed to evade a rejection. Your Honor is requested to find EVOX's

1  registrations as having no evidentiary value under section 410(c). As a consequence,

2  this case must be dismissed.

3  **VIII.    EVOX'S DCMA CLAIMS FAIL.**

4  EVOX does not address any of Defendant CALRAC's arguments except to

5  incorporate Dkt No. 34 9:17-11:1 – its own motion. In reply, Defendant CALRAC

6  incorporates its Opposition to EVOX's motion, Dkt No. 45 at 21:11-23:6.

7  **IX.       EVOX'S HAS NO RIGHT TO DIRECT OR INDIRECT PROFITS**.

8  EVOX contends that the amount of profits from renting cars in connection with the

9  rentals is the issue raised on the motion. EVOX is correct the parties have deferred

10 that issue until liability may be resolved on these cross-motions.  However, the

11 amount of profits is not the issue on this motion. Instead, it is the causal nexus

12 between such profits and the use of a photograph. The Ninth Circuit said these two

13 issues are completely different. When a painting is used in conjunction with selling

14 tickets to a concert, the Ninth Circuit in *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir.

15 2002) granted summary judgment because it is completely speculative to what extent

16 the painting influenced individual purchasers. EVOX has offered no rebuttal to that

17 evidence and argument other than to attempt to claim this motion involves the issue of

18 the *amount* of profits of Defendant. It seeks to postpone the issue. The Court is

19 requested instead to grant this summary adjudication as essentially unopposed.

20 **X.   CONCLUSION**.

21 Defendants CALIFORNIA RENT-A-CAR and STEVE VAHIDI respectfully

22 request this Court to grant Defendants' motion for summary judgment, or partial

23 summary adjudication.

24                           DEL TONDO & THOMAS

25

26 Dated: June 13, 2016        _____

27                           Douglas J. Del Tondo, Esq.
                             Attorneys for Defendants,
28                           CALIFORNIA RENT-A-CAR, INC. and
                             STEVE VAHIDI

---

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

    I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2201 Dupont Drive, Suite 820, Irvine, California 92612.  I am an attorney admitted to practice before the bar of this court at whose direction the service was made.

    On the Date of Service indicated below, I served the foregoing document(s) described on the person(s) listed below in the action of Evox Productions LLC v. California Rent-A-Car by sending a PDF version to:

Jonathan Gottfried, Esq.                  Counsel for Plaintiff
BROWNE GEORGE ROSS LLP
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Fax: (310) 275-5697
jgottfried@bgrfirm.com

  **BY CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

    Date of Service: June 13, 2016

    Executed on June 13, 2016, at Irvine, California.

    I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_____
Douglas J. Del Tondo